Provost & Colrick, P.A.
Counselors At Law
50 Thoreau Drive
Freehold, NJ 07728
(732) 462-6262
(732) 462-6538 fax
Attorneys for Plaintiff

| | |
|---|---|
| Nicholas Cosmas | United States District Court |
| | District of New Jersey |
| Plaintiff(s) | |
| | DOCKET NO.: 07-CV-6099 (FLW) |
| vs. | |
| | CIVIL ACTION |
| American Express Centurion Bank | |
| | AFFIDAVIT OF SERVICE |
| Defendant(s) | |

I hereby certify that the annexed documents were submitted this day for electronic filing

and a copy was sent to Goldberg and Associates via the U.S. Postal Service.

_____
Timothy J. Provost

Provost & Colrick, P.A.
Counselors At Law
50 Thoreau Drive
Freehold, NJ 07728
(732) 462-6262
(732) 462-6538 fax
Attorneys for Plaintiff

| Nicholas Cosmas | United States District Court |
|---|---|
| | District of New Jersey |
| Plaintiff(s) | |
| | DOCKET NO.: 07-CV-6099 (FLW) |
| vs. | |
| | CIVIL ACTION |
| American Express Centurion Bank | |
| | NOTICE OF CROSS MOTION FOR |
| | PARTIAL SUMMARY JUDGMENT |
| Defendant(s) | |

TO:     Goldberg & Associates
        75 Main Street
        Suite 201
        Millburn, NJ 07041
        (201) 420-1771
        Attorneys for Defendant

PLEASE TAKE NOTICE that on December 21, 2009, at 9 a.m. in the forenoon

or as soon thereafter as counsel may be heard, the undersigned attorney for Plaintiffs,

Nicholas Cosmas, shall apply to the Hon. Lois H. Goodman, at the United States District

Court for the District of New Jersey, located at Clarkson S. Fisher U.S. Courthouse, 402

East State Street, Room 7050, Trenton, New Jersey, 08608, for an Order for Partial

Summary Judgment on the issue of liability.

PLEASE TAKE FURTHER NOTICE that a proposed form of Order is attached.

PLEASE TAKE FURTHER NOTICE that oral argument is hereby requested.

PLEASE TAKE FURTHER NOTICE that in support of the within Notice of Motion the plaintiffs, shall rely on the attached certification, brief and supporting documents.

Provost & Colrick, P.A.

Dated:_____

_____
Timothy J. Provost, Esq.

Provost & Colrick, P.A.
Counselors At Law
50 Thoreau Drive
Freehold, NJ 07728
(732) 462-6262
(732) 462-6538 fax
Attorneys for Plaintiff

| Nicholas Cosmas | United States District Court |
| | District of New Jersey |
| Plaintiff(s) | |
| | DOCKET NO.:07-CV-6099 (FLW) |
| vs. | |
| | CIVIL ACTION |
| American Express Centurion Bank | |
| | ORDER |
| Defendant(s) | |

This matter having been opened to the Court by Provost & Colrick, LLC.,

attorneys for the Plaintiff on a Motion for partial summary judgment on the issue of

liability and the Court having considered the moving papers and oral argument if any and

for good cause shown,

IT IS on this _____ day of _____, 2009, ORDERED that defendants

motion for dismissal of plaintiff's complaint is denied.

FURTHER ORDERED the partial summary judgment on the issue of liability is

granted in favor of plaintiff and against defendant.

_____
Hon. Lois H. Goodman

Provost & Colrick
50 Thoreau Drive
Freehold, NJ 07728
732-462-6262
732-462-6538 fax
MPC6538@aol.com

December 8, 2009

United States District Court
Clarkson S. Fisher U.S. Courthouse
402 East State Street
Room 7050
Trenton, NJ 08608

RE:     Cosmas vs. American Express
        Docket No. 07-CV-6099 (FLW)
        Return Date December 21, 2009

Dear Sir:

    Enclosed please find the Original and 2 copies of plaintiffs Opposition to defendant's Motion to Dismiss, plaintiffs Motion for Summary Judgment on the issue of liability, supporting letter brief, list of documents certification, Notice of Motion and Proposed Order.  Please file the enclosed and return a copy of the motion marked filed in the enclosed postage paid envelope.

    Under cover of a copy of this letter defendants attorney is being served with this motion.

                    Sincerely,

                    Timothy J. Provost

cc:     Jack Gross
        Goldberg & Associates
        75 Main Street
        Milburn, NJ 07041

Provost & Colrick
50 Thoreau Drive
Freehold, NJ 07728
732-462-6262
732-462-6538 fax
MPC6538@aol.com

December 8, 2009

Hon. Goodman
United States District Court
Clarkson S. Fisher U.S. Courthouse
402 East State Street
Room 7050
Trenton, NJ 08608

RE:   Cosmas vs. American Express
      Docket No. 07-CV-6099 (FLW)
      Return Date December 21, 2009

Dear Judge Goodman,

Please accept the enclosed letter brief and supporting documents in lieu of a more

formal brief in opposition to defendants Motion to Dismiss plaintiffs complaint. And in

support of plaintiffs Motion for Partial Summary Judgment.

## STATEMENT OF FACTS

From the mid 1990's through 2003, plaintiff Nicholas Cosmas utilized two Credit

cards issued by Defendant American Express. One credit card was a personal card and

the other was a corporate card provided by his former corporate employer.

During the many years plaintiff utilized his personal card plaintiff accumulated

"rewards points" from American Express totaling over 600,000.00 points. Exhibit 1.

The fair market value of points established by defendant American Express for purchase

is of reward points is $25.00 per 1000 points or $15,000.00 600,000 points. Exhibit II

Deposition Nicholas Cosmas page 104 line 23-25 and page 105 lines 1-5.

On or about April 30, 2004 plaintiff entered into a settlement with defendant pertaining to his personal account paying the defendant $25,000.00 on his personal card. Exhibit III.

At the time of plaintiff's satisfying his personal card with defendant, defendant was owed approximately $43,000.00 by plaintiff's former employer on the corporate card. With the employer out of business, defendant began a campaign of attempting to collect the debt from plaintiff.

Plaintiff recounts that defendant began sending him letters and calling his home on a non-stop basis. Exhibit IV deposition of Nicholas Cosmas Page 37 Line 11-15. Thereafter, as a result of plaintiff not paying the corporate debt owed by plaintiff's employer to defendant, defendant cancelled plaintiff's reward points. When plaintiff demanded reinstatement, defendant responded:

Unfortunately, we are unable to reinstate your Membership Rewards points at this time.

Our records indicate that your Corporate Card account number 3783-479639-41009

Has been cancelled. Please contact our Credit Department to discuss the matter Further. Exhibit V American Express Letter June 7, 2004.

Plaintiff again insisted to defendant that he was not responsible for the Corporate Card debt and that his Reward Points should be reinstated. On August 17, 2004 defendant again wrote to plaintiff advising that plaintiff was responsible for the business account and as a result of the corporations' s default his points were cancelled. Exhibit

VI

Plaintiff always represented to defendant that he did not owe and was not responsible for the corporate debt. Defendants "redacted' tapes of conversations between Cosmas and defendant's representatives confirms that in June 4, 2004 defendant disputed the debt. The dispute is in defendants records. Exhibit VII Redact p.1 During this time defendant began reporting to the credit reporting agencies that plaintiff owed the debt and that the responsibility for the account was the "individual account holder" and that the account was closed by American Express with a past due balance of $42,329.00. Exhibit VIII

Plaintiff's expert has stated that as a result of defendant's improper credit reporting plaintiff has been damaged $5,189.00. Exhibit. VIIII Over the next year defendant continued call and write plaintiff demanding payment on the corporate account, reporting his credit delinquent and keeping his rewards points. Plaintiff continued to maintain his "innocence." Defendant brought suit in the Law Division of the Mercer County Superior Court Docket No. Mer-L-2410-05 to collect the corporate debt from the plaintiff. Plaintiff denied personal responsibility. Redacted notes from defendants file show that Mediation was ordered by the Court. The mediator requested proof of then defendant Cosmas personal guarantee from American Express. None was provided. Exhibit 6 (page 30) Defendant's notes further show that the mediator advised that American Express was not acting in good faith and cancelled the mediation. Exhibit X    Redacted notes page 31 - 32

The matter went to trial and on August 10, 2006 the complaint against the now plaintiff was dismissed. Exhibit XI

Plaintiff immediately contracted defendant and on August 15, 2006 sent a letter to defendant outlining is problems starting with his credit rating and the effect the improper reporting has had on other credit lines and his reward points.   Exhibit XII .

On August 29, 2006 plaintiff wrote to Equifax showing the dismissal of defendant's case against him and to correct his credit rating.  Exhibit XIII.  Thereafter, Equifax responded that they had contacted American Express and that American Express advised that the balance due from plaintiff was being correctly reported.   Exhibit XIIII The Court's ruling against American Express had provided plaintiff with no relief:  His credit was still being  slandered; he was being charged higher interest rates on credit cards: and he was still deprived of his reward points.  He was receiving as many harassing and threatening phone calls and letters as before he was vindicated in Court.

On  July 29, 2009 Edmond Garabedian from defendant American Express was deposed.  He is a thirty five year employee of American Express with a paralegal certification concentrating in civil litigation and testifies for American Express about once per week in Court.  The witness testified at  that plaintiff's account would have been "…reported derogatory in November 2003" page 10 line 22-23 and  "The credit report was not deleted until the end of  2007 or January 2008." page 18  line 4-6.  Exhibit XV deposition

When asked    Q.  And then we had litigation in which the court said that Mr. Cosmas
is not responsible from the paperwork you see in front of you; is that correct?

A.  There was a judgment entered in favor of Mr. Cosmas, yes.

Q.  And thereafter should American Express have notified the credit

reporting agencies and said clean up his credit, he doesn't owe the

$43,000?  Should that have happened?

A.  Yes.

Exhibit XVI  deposition page 15 lines 13-24

Despite the ruling of the Superior Court, plaintiffs situation remained un-changed from August 10, 2006 until January 2008 when plaintiff initiated the within litigation. Plaintiff wrote to defendant, called defendant, wrote and called the credit reporting agencies, spoke  to collectors, etc., all to no avail.

Plaintiff filed the within action in the Mercer County Superior Court on 11-30-2007 and served same upon defendant in early December 2007.  Defendant transferred the matter to  this Court thereafter.   Plaintiff suffered for over four (4) years of defendants malicious reprisal for plaintiff disputing a debt that he did not owe. Defendant knew defendant disputed the debt in 2003 but reported it anyway and attempted to collect it from the plaintiff.   Defendant sued plaintiff and the mediator found defendant to be acting in bad faith.   The defendant lost in Court and was contacted by there attorneys, by the plaintiff verbally and in writing and by Equifax and defendant still refused to cease its collection actions against the plaintiff.

This matter was not resolved until litigation was initiated due entirely to defendant's willful and malicious conducts.

## Legal Argument

Plaintiff sues defendant, a furnisher of information, under the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681 et seq. and at common law.

Much of the FCRA is directed specifically to the credit reporting agencies. The Act states, " inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681 (a) (1). See Gordon v. Greenpoint Credit, 266 F. Supp. 2d 1007 (2003).

As indicated in Gordon, inaccuracies not only come from credit reporting agencies, but also from institutions that furnish information to the reporters.

The Gordon court reviewed the liability of furnishers of information under the provisions of the FCRA as follows:

> The FCRA imposes civil liability on any person who willfully or negligently fails to comply with any of the Act's requirements with respect to any consumer, 15 U.S.C. § 1681n (willful noncompliance), § 1681o (negligent noncompliance). As it relates to furnishers of information to consumer reporting agencies, the FCRA sets forth two general requirements: the duty to provide accurate information (15 U.S.C. § 1681s-2(a)); and the duty to investigate the accuracy of reported information upon receiving notice of a dispute (§ 1681s-2(b)). Without more, the terms of §§ 1681n and 1681o would allow a consumer to recover from a furnisher of information for any willful or negligent failure to meet these duties. The FCRA however expressly excludes § 1681s-2(a) from the purview of §§ 1681 n and 1681o, instead leaving enforcement of § 1681s-2(a) to the Federal and State agencies and officials indentified in § 1681s. 15 U.S.C. §§ 1681s-2(c), 1681s-2(d). This express limitation on liability makes no mention of § 1681s-2(b). As the FCRA imparts civil liability to any person who willfully or negligently fails to

comply with any of the Act's requirements, and Congress has not expressly excluded § 1681s-2(b) or furnishers of information from this potential liability, the Court holds that a consumer can maintain a private cause of action against a furnisher of information for willful or negligent noncompliance with § 1681s-2(b).

Gordon, Supra., at 1009

According to the holding of the Court, the FCRA affords plaintiff Cosmas a private cause of action against a furnisher of information pursuant to 1681s-2(b).

State Claims:

The Gordon Court held that the FCRA does not preempt state common law claims in the nature of defamation, invasion of privacy or negligence. The Statute § 1681h(e) provides in relevant part as follows:

> No consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against ... any person who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer.

> 15 U.S.C. § 1681 h(e).

Plaintiff Cosmas complaint states common law claims against defendant for negligently reporting inaccurate information and failure to investigate and correct inaccuracies. His common law claims are authorized by § 1681 h(e) so long as he shows that the false information was furnished with malice or willful intent to injure the consumer.

Malice and willful intent:

Although the FCRA does not define malice or willful intent the Eighth Circuit has equated the malice and willful intent standard to the New York Times v. Sullivan standard that a statement be made with, "knowledge that it was false or with reckless disregard of whether it was false or not." (citations omitted.)

Gordon, Supra, at 1012

Punitive Damages:

In Evantash V.G.E. Capital 2003 U.S. Dist. LEXIS 23131 the Court, held that a credit reporting agency acted with conscious or reckless disregard to plaintiff's rights where the reporting agency continued to report the account on plaintiff's credit report as, "INCLUDED IN BANKRUPTCY" although the furnisher of information notified the reporting agency that their reporting was wrong.

Punitive damages may be warranted where the evidence shows the inaccuracies in credit reports arise from something more than an isolated instance of human error, which is promptly cured Evantash, Supra, at 26.

American Express acted in willful disregard of a court order clearing Cosmas' account and in willful disregard of notification of inaccuracies by Mr. Cosmas. In spite, of the court order and notifications, the defendant, American Express, persisted in erroneously reporting plaintiff's credit information.

It was only after plaintiff brought this lawsuit that American Express stopped their willful disregard of plaintiff's rights pursuant to the FCRA.

Damages and Attorney Fees:

15 U.S.C.§ 616 Civil liability for willful non compliance and §617 Civil liability

for negligent non compliance both provide for mandatory attorney fees in addition to damages as follows:

§ 616. Civil liability for willful noncompliance [15 U.S.C. §1681n]

(a) In general. Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1)   (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(2)   Such amount of punitive damages as the court may allow; and

(3)   In the case of any successful action to enforce any liability under this section, the cost of the action together with reasonable attorney's fees as determined by the court.

§617.   Civil liability for negligent noncompliance [15 U.S.C.§1681o]

(a) In general.   Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

1.   Any actual damages sustained by the consumer as a result of the failure; and

2.   In the case of any successful action to enforce any liability under this section the costs of the action together with reasonable attorney's fees as determined by the court.

The FCRA provides for damages, punitive damages and attorney fees upon a successful suit to enforce liability under the Act.

Under the circumstances, plaintiff requests that the court enter summary judgment
for plaintiff on the issue of liability.

Respectfully submitted,

Timothy J. Provost

cc:    Jack Gross
       Goldberg & Associates
       75 Main Street
       Milburn, NJ 07041

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). As the Supreme Court has indicated, "Summary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v.Catrett, 477 U.S. 317,327 (1986). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial. "Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3rd 560, 564 (3rd Cir. 2001) (citing Celotex Corp., supra, 477 U.S.at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Id. At 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations

omitted). If the moving party will bear the burden of persuasion at trial, the party must

support its motion with credible evidence-using any of the materials specified in Rule 56

(c)- that would entitle it to a directed verdict if not controverted at trial. Celotex Corp.,

supra, 477 U.S. at 331. Such an affirmative showing shifts the "burden of production" to

the party opposing the motion and requires the party to either demonstrate the existence

of a "genuine issue" for trial or to request additional time for discovery under Rule 56(f).

Fed. R. Civ. P. 56(e).

Once the moving party establishes the absence of a genuine issue of material fact,

however, the burden shifts to the non-moving party to "do more than simply show that

there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

A party may not defeat a motion for summary judgment unless it sets forth specific facts,

in a form that "would be admissible in evidence," establishing the existence of a genuine

issue of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a

summary judgment motion the "adverse party may not rest upon the mere allegations or

denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise

provided in this        rule, must set forth specific facts showing that there is a genuine

issue for trial") See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965,

969 (3rd Cir. 1982); Olympic Junior, Inc v. David Crystal, Inc., 463 F. 2d 1141, 1146 (3rd

Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly

probative," the court may grant summary judgment. Liberty Lobby, Inc., supra, 477 U.S.

at 249-250. The

non-movant will prevail only if the evidence produced is of "sufficient quantum and

quality" to allow a rational and fair-minded fact finder to return a verdict in his favor,

bearing in mind the applicable standard of proof that would apply at trial on the merits.

Id. At 249.  The facts of this case establish that defendant American Express acted with

reckless disregard of plaintiff's  rights by continuing to furnish the credit reporters with

false information after having received adequate notice that the information was false and

inaccurate.



Sincerely,

Timothy J. Provost

cc:     Jack Gross
        Goldberg & Associates
        75 Main Street
        Milburn, NJ 07041

Provost & Colrick, P.A.
Counselors At Law
50 Thoreau Drive
Freehold, NJ 07728
(732) 462-6262
(732) 462-6538 fax
Attorneys for Plaintiff

| Nicholas Cosmas | United States District Court |
|---|---|
| | District of New Jersey |
| Plaintiff(s) | |
| | DOCKET NO.:07-CV-6099 (FLW) |
| vs. | |
| | CIVIL ACTION |
| American Express Centurion Bank | |
| | LIST OF EXHIBITS |
| Defendant(s) | |

1.    Exhibit I- Monthly Statement from American Express showing 600,295 rewards

points.

2.    Exhibit II- Deposition of Nicholas Cosmas page 104 line 23-25 and page 105-1-5.

3.    Exhibit III- Letter from Nationwide Credit, Inc. regarding $25,000.00 settlement

payment.

4.    Exhibit IV- Deposition of Nicholas Cosmas page 37 line 11-15.

5.    Exhibit V- Letter from American Express dated June 7, 2004.

6.    Exhibit VI- Letter from American Express dated August 17, 2004.

7.    Exhibit VII-  Defendants "redacted" tapes between Cosmas and representatives

from American Express.

8.    Exhibit VIII- Copy of American Express reporting as Individual Account.

9.    Exhibit VIIII- Report from Eco-Stat LLC.

10.    Exhibit X- Notes from American Express mediator.

11.   Exhibit XI- Copy of Judgment issued.

12.   Exhibit XII- Copy of letter dated August 15, 2006 from Mr. Cosmas to American

Express outlining credit problems.

13.   Exhibit XIII- Copy of Letter dated August 29, 2006 from Mr. Cosmas to Equifax

requesting correction of credit rating.

14.   Exhibit XIIII- Copy of letter dated September 26, 2006 from Equifax.

15.   Exhibit XV- Deposition of defendant page 10 line 22-23 and page 18 line 4-6

16.   Exhibit XVI- Deposition of defendant page 15 lines 13-24.

## CERTIFICATION

Timothy J. Provost hereby certify that the foregoing list of documents are acute copies of
documents referred to in the enclosed letter brief .   All of the above statements made by
me in the foregoing are true and correct to the best of my knowledge.

I am aware that if any of the foregoing statements made by me are willfully false, I am
subject to punishment.

Date:_____          _____

                                      Timothy J. Provost

**Cards**

# Membership Rewards®
# Monthly Statement and
# Program News

Page 1 of 2

*American Express®*

For questions about your
Membership Rewards account,
contact
**1-800-AXP-EARN**
**(297-3276)**

www.americanexpress.com/rewards

American Express
Membership Rewards
PO Box 297813
Ft. Lauderdale, FL 33329-9785

**Statement Period**
**October 1, 2003** - **October 31, 2003**
Account activity after this period does not appear on this statement

Prepared for
NICHOLAS C COSMAS
Membership Rewards® Account Number
**1M98506345**

**Available Points**
**600,295**

Points are available when charges are paid in full and all your accounts are in
good standing.

## Account Summary

| | |
|---|---:|
| Opening points balance | 616,766 |
| New points earned | -16,471 |
| Points transferred or redeemed | 0 |
| Reinstated points and adjustments | 0 |
| New points balance | =600,295 |

## New Points Earned
10/01/03 - 10/31/03

| | Points Activity On Eligible Charges | Bonus Points Awarded | Forfeited Points Due To Late Payment | Total Points Activity Per Card |
|---|---|---|---|---|
| | 0 | 0 | 0 | 0 |
| Gold 3718-219106-21002 | | | | |
| Add'l Gold 3718-219106-21010 | 359 | 0 | -522 10/2003 | -162 |
| Add'l Gold 3718-219106-21036 | 0 | 0 | -31 10/2003 | -3. |
| Add'l Gold 3718-219106-27041 | 457 | | -2,426 10/2003 | -1,96 |
| Add'l Gold 3718-219106-27058 | 7,929 | 537 I Love NY Double Points 6073 | -22,774 10/2003 | -14,30 |
| **Totals** | 8,745 | 537 | -25,753 | -16,47 |

Membership Rewards: points earned may be transferred or redeemed as long as all enrolled Card accounts are in good standing. Points transferred or
redeemed cannot be reversed back into the program. Forfeited points can be reinstated for a fee by calling the number provided below.
Eligible Card charges are outlined in the Membership Rewards® program Terms and Conditions in your Membership Rewards Guide. If you have questions
please visit www.americanexpress.com/rewards or call 1-800-AXP-EARN (297-3276). From overseas, call collect 336-816-2799.

Continued on reverse



NICHOLAS C COSMAS
22 REVERE CT
PRINCTON JUNCTION NJ   08550-2162

*Exhibit I*

101

A.  Yes.

Q.  Who did you speak with?

A.  I sent letters, okay, and then they sent me a letter back.

Q.  You say you sent letters, more than one letter?

A.  I sent letters, yes.

Q.  How many letters?

A.  I called.  I tried calling and it makes it --

Q.  Let's talk about the letters first please.  How many letters did you send?

A.  Well, I have a letter here that was an answer to my letter.  Do you have a copy?

Q.  I understand that.  I'm talking about your letters to Amex.  How many letters did you send?

A.  I don't recall.

Q.  Was it more than ten?

A.  No.

Q.  Was it more than five?

A.  I would say, no.

Q.  Was it more than one?

A.  Yes.

Q.  Okay.  More than two?

102

A.  Yeah, probably.

Q.  I don't know what to know possibly. I want to know your recollection.

A.  My recollection is more than two.

Q.  More than two.  Do you have copies of those letters?  Did you keep copies of both of those letters?

A.  Yeah.

Q.  Do you have them in that bag?

A.  I must have something.

Q.  Do you want to take a look for them please?

A.  I have the letter from American Express.

Q.  We'll take one at a time.

A.  Tim, did I give you a copy of that this morning?

MR. PROVOST:  I think it was given in discovery.

MR. GROSS:  Off the record.

( A discussion off the record.)

MR. GROSS:  We'll leave a blank in the transcript for Mr. Cosmas to provide that.

Q.  So getting back to what we were

103

1  speaking about, Mr. Cosmas, you wrote American
2  Express at least twice about your reward point
3  issues; is that correct?
4  A.    Correct.
5       Q.   And you received you believe one
6  response; is that correct?
7  A.    Correct.
8       Q.   In return and that's actually attached
9  to your letter of July 15th of 2004?
10  A.   Yes.
11      Q.   Is that correct?
12  A.   Yes, July 15, 2004.
13      Q.   That's what's attached to it?
14  A.   Yes.
15      Q.   Did you speak with anybody at American
16  Express or did you just correspond with them?
17  A.   I had in one of my letters someone that I
18  spoke to and complimented to them that they were
19  the only ones that ever got back to me.  I see
20  this director of customer service.
21      Q.   Yes, I see that.  So that tells you
22  that you did speak with somebody at Amex?
23  A.    I spoke to somebody at Amex, but this must
24  have been a general before I spoke to anybody or
25  whatever.  Did they sign this?

104

1       Q.   How do you evaluate the value of those
2  membership reward points?  How do you arrive at
3  your value?
4  A.    I received from you there's that I circled
5  the rules and regulations.  Did you have a copy
6  that you sent?
7       Q.   I'm not sure I know what you're
8  referring to.
9  A.   Okay, there's the rules and regulations.
10  Do you have --
11      MR. PROVOST:  I'm sure we have it here
12  somewhere, but I believe that's what you had sent
13  to me the last time.  I got it by express mail
14  last week or so about reward points.
15      Q.   Okay.  So you looked at something that
16  we sent to arrive at your valuation?
17  A.   Which I knew beforehand because I had to
18  purchase points.
19      Q.   So that's what I am asking you.
20  Obviously, you had an idea before you got that
21  documentation from my firm?
22  A.   Right, how to value them.
23      Q.
24  A.   I w
25  and I wa

Exhibit II

Case 3:07-cv-06099-FLW-LHG  Document 17  Filed 12/08/09  Page 23 of 51 PageID: 838

Cosmas vs. American Express Centurion Bank                                    N. Cosmas, 7/29/09

105

phone if you want to purchase reward points, it's
$25 per thousand and all of a sudden I saw it on
your -- I also saw it on your rules and
regulations.

Q. If you wanted to purchase?

A. Yes.

Q. Did you see anything else in the rules
and regulations, by the way, that you're
referring to?

A. That's all I looked for.

Q. Did you see anything else other than
what you may have looked for? Did you see
anything else about may be when you waive the
point and things of that nature? Did you see
anything about that?

A. Well, I figured that --

Q. I'm asking a specific question.

A. -- if I saw --

Q. Whether you saw --

A. I didn't want to go through the whole
thing. I saw it quickly.

Q. Did you see --

A. That there were rules and regulations.

Q. Did you see anything about how you
might forfeit points? Did you see anything in

106

that document when you looked at it?

A. Did I see anything?

Q. Yes.

A. I saw something that you had regulations if
a person doesn't pay.

Q. What was the regulation?

A. You could forfeit points.

Q. So you are aware of that as well?

A. But I figured that your letter to me
supersedes what's there.

Q. All right. Which letter to you?

A. The American Express letter written
behind --

Q. This letter supersedes the terms and
conditions of that rewards program?

A. Well --

Q. Is that what you're saying? I just
want to make sure I understand what you're
saying.

A. This letter says that your points are not
being given, you know, your points are not being
given because your corporate card is delinquent.
In 2006 I was proven that the corporate card did
not belong to me so I wasn't delinquent therefore
according to the letter --

107

1   Q. Right.
2  A. -- the points are to be reinstated.
3   Q. So let me step back for a minute.
4  Although I didn't see in the letter that the
5  points will be reinstated -- we'll get to that,
6  trust me. But what I'm asking you about is
7  whether you saw in that rewards points agreement
8  language about forfeiting your points? Did you
9  see that? I never got a clear answer. That is
10 what I'm asking again.
11 A.  I saw something. I just glanced it at when
12 I saw the forfeited.
13    Q.  That's what I'm asking. I'm not sure
14 there's a difference between glanced and looked
15 at it. Did you see the language?
16 A.  I saw there was something about it, but I
17 was looking quickly to see how I purchase the
18 value of these points.
19    Q.  Let's put it another way. Were you
20 aware if you fail to make payments you forfeit
21 your reward points? Are you aware of that?
22 A.  No.
23    Q.  You're not aware of that?
24 A.  No.
25    Q.  Didn't you just tell me that a moment

108

1  ago that you saw that language in the agreement?
2  A.  I saw something as I was going through that
3  you could forfeit. I didn't analyze and see how
4  you forfeit points.
5     Q.  I'm not asking you whether you
6  analyzed it. I'm just asking as you sit here
7  today are you aware of that fact?
8  A.  You're making me aware.
9     Q.  I'm making you aware?
10 A.  Yeah.
11    Q.  You weren't aware before this
12 discussion? You read it there. Did you read it
13 in --
14 A.  I just happened to see as I was looking for
15 a purchase that there is a column, but I did not
16 read it.
17    Q.  You didn't read it?
18 A.  No.
19    Q.  So you weren't aware?
20 A.  Right.
21    Q.  And did you receive statements from
22 American Express?
23 A.  Statements?
24    Q.  On your gold card?
25 A.  Of course.

03/15/1994  20:57   602-379-2245          NATIONWIDE CREDIT            PAGE  82
                                          NATIONWIDE CREDIT            PAGE  82

# Nationwide Credit, Inc.

3600 E. University Dr., Suite II·1350 • Phoenix, AZ 85034 • 1·800·869·2070 • Fax: 602-379-2245

April 30, 2004


Nicholas Cosmas
22 Revere Ct.
Princeton, NJ.  08550


Re:  American Express Account Number 371821910521002

Dear Mr./ Ms. Cosmas:

The above American Express account was settled with our Agency in the amount of $25,000.00 on 03/30/04.

If you should have any questions regarding this matter, please contact us at (800) 869-2070.

Sincerely,


Heather Ousley
Client Services


This communication is from a debt collector.
See reverse side for important information.


Exhibit III

37

A.   Yes.

Q.   Now could you set out for me all of the claims that you have against American Express in this lawsuit?  What are your claims against them?

A.   All of the claims, yes.  My other credit card because of the damage to my credit, I was charged additional interest rates higher on any card that I had.  I had on my personal account over 600,000 reward points that were not never reinstated.  Complete harassment from 2004 to 2008 continued till Mr. Provost appeared before the judge in order to cease these harassing calls.  And what else?  The monetary.  Well, there's punitive damages for the...

Q.   I'm listening so go ahead, list everything, all of the claims for me that you have against American Express.

A.   Well, now I have legal fees.  I also had to pay the -- we also had to pay the economist.  I was damaged with these items.

Q.   Anything else?

A.   In fact, I'm here today, you know, to appear for depositions now.  I live in North Carolina.

38

Q.   Anything else?

A.   As far as I could think of right now that's it.

Q.   Let's talk about these various things bit by bit.  Your first claim that you listed was that you have higher interest rates on various credit cards that you had?

A.   Right.

Q.   Other credit cards that you had; is that correct?

A.   Right, yes.

Q.   Could we first list all of those various credit cards that you had and I guess this is as you say late '03, early '04?

A.   Yes, early '04 to -- well, can I ask a question off the record?

Q.   I don't think so.

A.   You play a hard ball game.

Q.   I'm sorry, I don't make the rules.  I just play by the rules.

A.   Am I supposed to answer?

Q.   You're supposed to answer to the best of your ability.

A.   Okay.  I'm asking did you receive the economist's report or...

39

1    Q.   I received all kinds of things, but
2    what I'm asking you is your recollection.
3    A.   Yes.  Chase.
4        Q.   What else?
5    A.   Bank America.  I have a list in there.  I
6    could tell you if you...
7        Q.   The list, you mean from the expert's
8    report?
9    A.   No, I have the list, some analysis that I
10   did.
11       Q.   That you, yourself did?
12   A.   That I checked -- no, that I put the names
13   down.
14       Q.   On a list?
15   A.   Yeah.
16       Q.   A list that your attorney has or that
17   you have somewhere?
18   A.   That I have.
19       Q.   On your person?
20   A.   I have it in this bag.
21       Q.   Sure.  Bring it out.
22   A.   Of all the names?
23       Q.   Sure.
24   A.   Capital One.
25       Q.   Could you just bring out the sheet,

40

1    Mr. Cosmas.
2    A.   I just made a -- okay, I see.
3        Q.   You could just bring it out.  Bring it
4    out just so we can refer to it.  It's just easier
5    and clearer that way.
6    A.   Capital One, Chase, Discover, Fleet, Bank
7    of America, Harris Bank.  I think Harris became
8    MBNA and that's it.
9        Q.   May I see the sheet, sir?
10   A.   Does this pertain -- I mean, this is my
11   notes.
12       Q.   It all pertains.
13   A.   But it's my notes.
14       Q.   I understand, but it all pertains.
15   May I take a look at it?
16   A.   I don't know.
17    MR. PROVOST:  May I take a look at this
18   work sheet you're talking about.
19    MR. GROSS:  Could I get a copy of this so
20   I can mark it?
21    MR. PROVOST:  Sure.
22    MR. GROSS:  So I can ask some questions
23   about it.
24    ( A recess is taken.)
25       Q.   Are there any

Exhibit IV



American Express
Travel Related Services Company, Inc.
Service Center at Ft. Lauderdale
PO Box 297812
Ft. Lauderdale, FL 33329-7812

June 7, 2004


NICHOLAS C. COSMAS
22 REVERE COURT
PRINCTON JUNCTION NJ 08550-2162

Account Number:  3718-219106-21002

Dear Nicholas C. Cosmas:

Thank you for your recent inquiry concerning your Membership
Rewards(R) account.

Unfortunately, we are unable to reinstate your Membership Rewards
points at this time. Our records indicate that your Corporate Card
account number 3783-479639-41009 has been cancelled. Please contact
our Credit Department directly to discuss this matter further.

Please call 1-800-AXP-EARN' (297-3276), if we can be of further
assistance.

Sincerely,

L. Seiser
Supervisor, Customer Service

E 371821910621002 12101 SGLMY10 SGLN271          29121          N  FT

*Exhibit V*



**Cards**

American Express Cards
American Express Service Center
777 American Expressway
Fort Lauderdale, FL 33337-0001

August 17, 2004

Nicholas C. Cosmas
22 Revere Ct.
Princeton Junction, NJ 08550-2162

Re: Membership Rewards Account 1M78506345

Dear Mr. Cosmas:

Thank you for your correspondence to the Executive Offices of American Express. I have been asked to respond on their behalf. In your letter, you expressed concern over the status of the above referenced Account and the forfeited Membership Rewards points.

I have reviewed the information you provided, along with the Customer Service files and your relationship with American Express. Our records indicate that on September 19, 2003 you were advised that you are responsible for the business Account. In addition, that business Account would impact your ability to redeem the Membership Rewards points. Please note that, according to the terms and conditions of the Membership Rewards program, if an Account is cancelled for a derogatory reason, the points are immediately forfeited. You were advised of this in the past. Our position has not changed.

Mr. Cosmas, I regret that I cannot offer a more favorable response, and I do hope that you will understand our position in this matter. Perhaps future circumstances will allow us to resume our business relationship.

Sincerely,

*Victoria Babich*

Victoria Babich
Executive Assistant

American Express Travel Related
Services Company, Inc.

Exhibit VI

```
05/25/2004  0699  tom .... you need to get cm back on th   221 03
05/25/2004  0699  e phone advs needs at least 10% dwn fo  221 03
05/25/2004  0699  r you to hld the acct for the 30 k ...  221 03
05/26/2004  0699  F/U DATE-TIME 2004-05-27 11:30:00 A   039 03
05/27/2004  0699  F/U DATE-TIME 2004-05-30 11:30:00 A   039 03
```

```
05/28/2004  0699  CHANGE MODE ACTIVATED                002 03
05/28/2004  0699  CHANGE MODE ACTIVATED                002 03
5/12/05 Collector Notes            Cosmas     Nicholas 12      OPS
05/28/2004  0699  ///gave scell 917 826 7089           002 03
05/30/2004  0699  PRM DATE-AMT 2004-05-31 $1.00        039 03
05/30/2004  0699  F/U DATE-TIME 2004-05-31 11:30:00 A  039 03
05/31/2004  0699  F/U DATE-TIME 2004-05-31 05:00:00 P  039 03
06/03/2004  0699  PRM DATE-AMT 2004-06-30 $1.00        039 03
06/03/2004  0699  F/U DATE-TIME 2004-06-04 08:00:00 A  039 03
06/04/2004  0699  AX ADDTNL POST-PLCMNT MEDIA RECEIVED      03
06/04/2004  0699  gmid, sys they are negotiating on    039 03
06/04/2004  0699  reievables. rfsd to set any ppa or pro 039 03
06/04/2004  0699  ve intentions.                       039 03
```

```
DATE: 12/07/07   5/17/04     FILE NOTES          PRINTED BY: KC    PG: 5 File
#: 5-08525-0
06/04/2004  0699  F/U DATE-TIME 2004-06-07 08:00:00 A  039 03
06/04/2004  0699  CHANGE MODE ACTIVATED                030 03
06/04/2004  0699  wmn sd cm nt there--id self as office 030 03
06/04/2004  0699  manager diana--gmid--gd4p--explained s 030 03
06/04/2004  0699  ituation--clms is nt one respons 4 bil 030 03
06/04/2004  0699  ls--adv is her compny and she in mngmn 030 03
06/04/2004  0699  t and she nds 2 either gt me 2 person  030 03
06/04/2004  0699  who deals w/ this or deal w/ this hers 030 03
06/04/2004  0699  elf                                 030 03
06/04/2004  0699  CHANGE MODE ACTIVATED                030 03
06/04/2004  0699  F/U DATE-TIME 2004-06-07 05:00:00 P  030 03
5/12/05 Collector Notes            Cosmas     Nicholas 13      OPS
06/04/2004  0699  CHANGE MODE ACTIVATED                030 03
06/04/2004  0699  F/U DATE-TIME 2004-06-07 04:45:00 P  030 03
06/04/2004  0699  CHANGE MODE ACTIVATED                030 03
06/04/2004  0699  notes cont--adv diana acosta office mn 030 03
06/04/2004  0699  gr hv 2 mk dcsn by 5pm tdy and cb--sd 030 03
06/04/2004  0699  wll rch cm and either gt him 2 cll or  030 03
06/04/2004  0699  she wll cll me bck by 5pm            030 03
06/04/2004  0699  CHANGE MODE ACTIVATED                030 03
```

Exhibit VII



## Adverse Accounts

The following accounts contain information that some creditors may consider to be adverse. Adverse account information may generally be years from the date of the first delinquency, depending on your state of residence. The adverse information in these accounts has been pri >brackets< or is shaded for your convenience, to help you understand your report. They are not bracketed or shaded this way for creditors account # may be scrambled by the creditor for your protection).

### AMERICAN EXPRESS #027453620019334498

PO BOX 297871
FORT LAUDERDAL , FL 33329-7871
(800) 874-2717

| | | | |
|---|---|---|---|
| Balance: | $42,329 | Pay Status: | >Charged Off as |
| Date Updated: | 12/2005 | Account Type: | Open Account |
| High Balance: | $43,529 | Responsibility: | Individual Accou |
| Past Due: | >$42,329< | Date Opened: | 05/1996 |
| | | Date Closed: | 10/2003 |

**Loan Type:** Credit Card
**Remark:** Account closed by credit grantor

### CHASE/BANK ONE CARD SERV #4417122403455125

800 BROOKSEDGE BLV
WESTERVILLE , OH 43081
(800) 955-9900

| | | | |
|---|---|---|---|
| Balance: | $0 | Pay Status: | Paid or Paying as |
| Date Updated: | 11/2005 | Account Type: | Revolving Accou |
| High Balance: | $19,554 | Responsibility: | Authorized Accou |
| Credit Limit: | $19,500 | Date Opened: | 02/1994 |
| Past Due: | $0 | Date Closed: | 07/2005 |
| | | Date Paid: | 12/2003 |

**Loan Type:** Credit Card
**Remark:** Account closed by credit grantor

**Late Payments**
48 months     **Last 48 Months**     oc: sep aug jal jun may apr mar feb '04 dec nov oc: sep aug jal jun may apr mar feb
>3<  0   0                            oc: sep aug jal jun may apr mar feb '03 dec nov oc: sep aug jal jun may apr mar feb

### FIRST UNION NATIONAL BAN #30301548154

PO BOX 3117
WINSTON SALEM , NC 27102
Phone number not available

| | | | |
|---|---|---|---|
| Balance: | $0 | Pay Status: | Paid or Paying as |
| Date Verified: | 12/2001 | Account Type: | Installment Acco |
| High Balance: | $23,598 | Responsibility: | Co-Signer on Ac |
| Past Due: | $0 | Date Opened: | 10/1998 |
| Terms: | $0 for 38 months | Date Closed: | 12/2001 |

**Loan Type:** Lease
**Remark:** Closed

**Late Payments**
32 months     **Last 32 Months**     X
>17<  0   0                           nov oc: sep aug jal jun may apr mar feb '01 dec nov oc: sep aug jal jun may apr mar
                                      nov oc: sep aug jal jun may apr

### HSBC #7824143001146627

PO BOX 4604
BUFFALO , NY 14240
(800) 874-2100

| | | | |
|---|---|---|---|
| Balance: | $137,428 | Pay Status: | >30 Days.Past D |
| Date Updated: | 12/2005 | Account Type: | Line of Credit Ac |
| High Balance: | $150,898 | Responsibility: | Joint Account |
| Credit Limit: | $150,000 | Date Opened: | 09/2003 |
| Past Due: | >$2,530< | Date Closed: | 07/2005 |
| Terms: | Minimum $1,327 | | |

**Loan Type:** Home Equity Loan
**Remark:** Account closed by credit grantor
>Maximum delinquency of 90 days in 08/2005<

**Late Payments**
27 months     **Last 27 Months**     nov oc: sep aug jal jun may apr mar feb '05 dec nov oc: sep aug jal jun may apr mar
>4< >2< >1<                          nov oc: sep

## Satisfactory Accounts

The following accounts are reported with no adverse information. (Note: The account # may be scrambled by the creditor for your protectio

https://annualcreditreport.transunion.com/tab/product/report/single?addScore=false&cb=FA   1/10/2006

*Exhibit VIII*



# ECO-STAT LLC
ECONOMIC & STATISTICAL CONSULTANTS

**New Jersey**

100 Eagle Rock Ave., Suite 200
East Hanover, NJ 07936
973.929.3532 Tel
973.929.3533 Fax

ecostat@friedmanllp.com
www.ecostat.com

**New York**

1700 Broadway, 23rd Floor
New York, New York 10019
212.842.7695 Tel
212.842.7001 Fax

(800) ECO-STAT Tel
(888) ECO-STAT Fax

August 21, 2008

Timothy Provost, Esq.
PROVOST & COLRICK
50 Thoreau Drive
Freehold, New Jersey 07728

**Re: Nicholas Cosmas
Our Case # 508493**

Dear Mr. Provost:

At your request, we have analyzed Mr. Nicholas Cosmas' economic loss as a result of American Express' delinquency notation on Mr. Cosmas' credit report as well as their failure to remove such notation in April 2004 after a Court order.

We were informed that as a result of such notation on Mr. Cosmas' credit report, he began to be charged higher interest rates by other credit card companies. From our review of Mr. Cosmas' credit card account statements, we calculated his overcharged financial fees. The following tables show Mr. Cosmas' loss incurred by his credit cards with Bank of America (Account # 9129), Chase (Account # 0191), Fleet (Account # 6182), Harris Bank (MBNA) (Account # 3838), and Harris Bank (Accounts # 3953 & #8446).



Exhibit VIII

1

## The Value of Nicholas Cosmas' Bank of America Credit Card # xxxxxxxxxxx9129

| Date | Interest Rate | Balance | Inflated Rate | Over-Charged |
|------|------|------|------|------|
| 10/5/2005 | 14.74% | $15,079.90 | 0.00% | 0.00 |
| 11/4/2005 | 25.74% | 14,795.09 | 11.00% | $133.76 |
| 12/5/2005 | 25.99% | 14,587.36 | 11.00% | 136.28 |
| 1/6/2006 | 26.24% | 14,431.86 | 11.00% | 139.18 |
| 2/4/2006 | 26.24% | 14,163.62 | 11.00% | 123.79 |
| 3/6/2006 | 26.49% | 13,885.85 | 11.00% | 125.54 |
| 4/5/2006 | 26.74% | 13,704.24 | 11.00% | 123.90 |
| 5/4/2006 | 26.74% | 13,509.88 | 11.00% | 118.07 |
| 6/6/2006 | 26.99% | 13,289.04 | 11.00% | 132.16 |
| 7/6/2006 | 27.24% | 13,079.48 | 11.00% | 118.25 |
| 8/4/2006 | 27.24% | 12,754.71 | 11.00% | 111.47 |
| 9/6/2006 | 27.24% | 12,831.78 | 11.00% | 127.61 |
| 10/5/2006 | 27.24% | 14,058.55 | 11.00% | 122.87 |
| 11/4/2006 | 27.24% | 12,529.98 | 11.00% | 113.28 |
| 12/5/2006 | 27.24% | 1,401.35 | 11.00% | 13.09 |
| 1/5/2007 | 27.24% | 1,140.57 | 11.00% | 10.66 |
| 2/5/2007 | 27.24% | 1,148.91 | 11.00% | 10.73 |
| 3/6/2007 | 27.24% | 944.41 | 11.00% | 8.25 |
| 4/5/2007 | 27.24% | 725.88 | 11.00% | 6.56 |
| 5/4/2007 | 27.24% | 490.12 | 11.00% | 4.28 |
| 6/6/2007 | 27.24% | 258.69 | 11.00% | 2.57 |
| 7/6/2007 | 27.24% | 109.59 | 11.00% | 0.99 |
| 8/8/2007 | 27.24% | 1.04 | 11.00% | 0.01 |
| 9/6/2007 | 27.24% | 3,686.38 | 11.00% | 32.22 |
| 10/4/2007 | 26.74% | 3,954.14 | 11.00% | 33.37 |
| 11/5/2007 | 26.74% | 6,223.01 | 11.00% | 60.01 |
| 12/6/2007 | 26.49% | 7,539.94 | 11.00% | 70.44 |
| 1/7/2008 | 26.24% | 8,783.71 | 11.00% | 84.71 |
| 2/5/2008 | 24.99% | 9,172.57 | 11.00% | 80.17 |
| 3/6/2008 | 18.74% | 9,468.12 | 4.75% | 36.96 |
| 4/4/2008 | 17.99% | 9,454.82 | 4.00% | 30.05 |
| 5/5/2008 | 17.99% | 1,263.83 | 4.00% | 4.29 |
| 6/5/2008 | 17.74% | 633.44 | 3.75% | 2.02 |
| | | TOTAL: | | $2,117.58 |

## The Value of Nicholas Cosmas' Chase Credit Card # xxxxxxxxxxxx0191

| Date | Interest Rate | Balance | Inflated Rate | Over-Charged |
|------|------|---------|------|------|
| 3/25/2005 | 9.99% | $12,882.19 | 0% | |
| 4/25/2005 | 18.74% | 12,082.66 | 8.75% | $192.31 |
| 5/24/2005 | 18.99% | 11,562.29 | 8.75% | 174.45 |
| 6/24/2005 | 10.49% | 11,164.31 | 0% | |
| 7/1/2005 | 10.74% | 10,771.48 | 0% | |
| 8/1/2005 | 10.99% | 10,367.70 | 0% | |
| 9/1/2005 | 11.24% | 9,965.46 | 0% | |
| 10/1/2005 | 11.24% | 9,556.72 | 0% | |
| 11/1/2005 | 11.49% | 9,249.29 | 0% | |
| 12/1/2005 | 11.74% | 8,937.69 | 0% | |
| 1/1/2006 | 11.74% | 8,726.00 | 0% | |
| 2/1/2006 | 11.99% | 8,514.22 | 0% | |
| 3/1/2006 | 11.99% | 8,422.44 | 0% | |
| 4/1/2006 | 12.24% | 8,259.53 | 0% | |
| 5/1/2006 | 12.49% | 8,093.89 | 0% | |
| 6/1/2006 | 12.49% | 7,879.07 | 0% | |
| 7/1/2006 | 12.74% | 7,761.45 | 0% | |
| 8/1/2006 | 12.74% | 7,595.02 | 0% | |
| 9/1/2006 | 12.74% | 7,522.11 | 0% | |
| 10/1/2006 | 12.74% | 7,400.66 | 0% | |
| 11/1/2006 | 12.74% | 7,180.02 | 0% | |
| 12/1/2006 | 12.74% | 6,954.34 | 0% | |
| 1/1/2007 | 12.74% | 6,728.32 | 0% | |
| 2/1/2007 | 12.74% | 6,500.26 | 0% | |
| 3/1/2007 | 12.74% | 6,363.68 | 0% | |
| 4/1/2007 | 12.74% | 6,232.00 | 0% | |
| 5/1/2007 | 12.74% | 5,996.76 | 0% | |
| 6/1/2007 | 12.74% | 5,760.85 | 0% | |
| 7/1/2007 | 12.74% | 5,620.65 | 0% | |
| 8/1/2007 | 12.74% | 5,480.96 | 0% | |
| 9/1/2007 | 12.24% | 5,287.05 | 0% | |
| 10/1/2007 | 12.24% | 5,089.49 | 0% | |
| 11/1/2007 | 11.99% | 4,890.59 | 0% | |
| 12/1/2007 | 11.74% | 4,737.16 | 0% | |
| 1/1/2008 | 10.99% | 4,480.59 | 0% | |
| 2/1/2008 | 10.49% | 4,269.75 | 0% | |
| 3/1/2008 | 9.74% | 4,202.62 | 0% | |
| 4/1/2008 | 9.74% | 4,152.20 | 0% | |
| 5/1/2008 | 9.49% | 4,084.37 | 0% | |
| | | **TOTAL:** | | $366.76 |

3

## The Value of Nicholas Cosmas' Fleet Credit Card # xxxxxxxxxxxx6182

| Date | Interest Rate | Balance | Inflated Rate | Over-Charged |
|------|------|------|------|------|
| 1/10/2006 | 13.24% | $290.98 | 0% | |
| 2/10/2006 | 18.24% | 234.96 | 5.00% | $1.00 |
| 3/10/2006 | 18.49% | 227.21 | 5.00% | 0.87 |
| 4/10/2006 | 18.74% | 214.98 | 5.00% | 0.91 |
| 5/10/2006 | 15.65% | 2,776.44 | 5.00% | 11.41 |
| 6/10/2006 | 17.19% | 3,675.50 | 5.00% | 15.61 |
| 7/10/2006 | 19.24% | 3,850.91 | 5.00% | 15.83 |
| 8/10/2006 | 18.78% | 7377.11 | 5.00% | 31.33 |
| 9/10/2006 | 18.98% | 8,129.20 | 5.00% | 34.52 |
| 10/10/2006 | 19.12% | 8,256.39 | 5.00% | 33.93 |
| 11/9/2006 | 19.24% | 7,563.15 | 5.00% | 31.08 |
| 12/9/2006 | 19.24% | 1.69 | 5.00% | 0.01 |
| 1/11/2007 | 19.24% | 8,677.10 | 5.00% | 39.23 |
| 2/9/2007 | 19.24% | 8,253.77 | 5.00% | 32.79 |
| 3/12/2007 | 19.24% | 8,193.56 | 5.00% | 34.79 |
| 4/11/2007 | 19.24% | 8,035.80 | 5.00% | 33.02 |
| 5/10/2007 | 19.24% | 7,807.59 | 5.00% | 31.02 |
| 6/12/2007 | 27.99% | 7,660.52 | 13.75% | 95.23 |
| 7/12/2007 | 27.99% | 5,745.74 | 13.75% | 64.93 |
| 8/10/2007 | 4.99% | 11,111.34 | 0% | 0 |
| 9/11/2007 | 4.99% | 12,696.05 | 0% | <u>0</u> |
| | | **TOTAL:** | | **$507.51** |

4

## The Value of Nicholas Cosmas' Harris (MBNA) Credit Card # xxxxxxxxxxxx3838

| Date | Interest Rate | Balance | Inflated Rate | Over-Charged |
|------|------|------|------|------|
| 10/1/2005 | 12.99% | $6,154.82 | | |
| 11/1/2005 | 23.99% | 6,352.71 | 11.00% | $59.35 |
| 12/1/2005 | 23.99% | 6,007.07 | 11.00% | 54.31 |
| 1/1/2006 | 23.99% | 5,647.84 | 11.00% | 52.76 |
| 2/1/2006 | 23.99% | 5,373.84 | 11.00% | 50.20 |
| 3/1/2006 | 23.99% | 5,491.89 | 11.00% | 46.34 |
| 4/1/2006 | 23.99% | 5,465.38 | 11.00% | 51.06 |
| 5/1/2006 | 23.99% | 5,279.60 | 11.00% | 47.73 |
| 6/1/2006 | 23.99% | 5,132.56 | 11.00% | 47.95 |
| 7/1/2006 | 23.99% | 5,179.25 | 11.00% | 46.83 |
| 8/1/2006 | 23.99% | 5,421.43 | 11.00% | 50.65 |
| 9/1/2006 | 28.24% | 5,620.46 | 15.25% | 72.80 |
| 10/1/2006 | 28.24% | 5,988.46 | 15.25% | 75.06 |
| 11/1/2006 | 28.24% | 6,181.33 | 15.25% | 80.06 |
| 12/1/2006 | 28.24% | 6,464.66 | 15.25% | 81.03 |
| 1/1/2007 | 28.24% | 6,370.92 | 15.25% | 82.52 |
| 2/1/2007 | 28.24% | 6,810.81 | 15.25% | 88.21 |
| 3/1/2007 | 28.24% | 6,807.49 | 15.25% | 79.64 |
| 4/1/2007 | 28.24% | 6,534.66 | 15.25% | 84.64 |
| 5/1/2007 | 28.24% | 6,504.17 | 15.25% | 81.52 |
| 6/1/2007 | 28.24% | 6,334.01 | 15.25% | 82.04 |
| 7/1/2007 | 28.24% | 6,660.14 | 15.25% | 83.48 |
| 8/1/2007 | 26.99% | 6,499.78 | 14.00% | 77.29 |
| 9/1/2007 | 26.99% | 6,080.75 | 14.00% | 72.30 |
| 10/1/2007 | 26.49% | 5,956.64 | 14.00% | 68.54 |
| 11/1/2007 | 26.49% | 5,924.09 | 14.00% | 70.44 |
| 12/1/2007 | 26.24% | 5,792.14 | 14.00% | 66.65 |
| 1/1/2008 | 25.99% | 5,697.62 | 13.75% | 66.54 |
| 2/1/2008 | 24.74% | 5,493.23 | 12.50% | 58.32 |
| 3/1/2008 | 24.74% | 5,313.05 | 12.50% | 52.77 |
| 4/1/2008 | 23.99% | 5,216.30 | 11.75% | 52.06 |
| 5/1/2008 | 23.99% | 5,052.53 | 11.75% | 48.79 |
| | | **TOTAL:** | | **$2,031.88** |

5

## The Value of Nicholas Cosmas' Harris Bank Credit Cards# xxxxxxxxxxxx3953 & 8446

| Date | Interest Rate | Balance | Inflated Rate | Over-Charged |
|------|------|------|------|------|
| 10/1/2004 | 13.90% | $6,770.53 | 0% | |
| 11/1/2004 | 16.49% | 6,546.54 | 2.59% | $14.40 |
| 12/1/2004 | 16.74% | 6,201.37 | 2.59% | 13.20 |
| 1/1/2005 | 16.99% | 5,998.41 | 2.59% | 13.19 |
| 2/1/2005 | 16.99% | 5,737.43 | 2.59% | 12.62 |
| 3/1/2005 | 17.24% | 5,319.63 | 2.59% | 10.57 |
| 4/1/2005 | 17.49% | 5,002.63 | 2.59% | 11.00 |
| 5/1/2005 | 17.49% | 4,622.51 | 2.59% | 9.84 |
| 6/1/2005 | 17.74% | 4,215.53 | 2.59% | 9.27 |
| 7/1/2005 | 17.74% | 3,757.16 | 2.59% | 8.00 |
| 8/1/2005 | 17.99% | 3,249.99 | 2.59% | 7.15 |
| 9/1/2005 | 18.24% | 2,864.62 | 2.59% | 6.30 |
| 10/1/2005 | 18.49% | 2,523.15 | 2.59% | 5.37 |
| 11/1/2005 | 18.49% | 2,166.82 | 2.59% | 4.77 |
| 12/1/2005 | 18.74% | 1,851.43 | 2.59% | 3.94 |
| 1/1/2006 | 18.99% | 1,656.93 | 2.59% | 3.64 |
| 2/1/2006 | 18.99% | 1,455.41 | 2.59% | 3.20 |
| 3/1/2006 | 19.24% | 1,440.19 | 2.59% | 2.86 |
| 4/1/2006 | 19.49% | 1,410.55 | 2.59% | 3.10 |
| 5/1/2006 | 19.49% | 1,349.61 | 2.59% | 2.87 |
| 6/1/2006 | 19.74% | 1,234.58 | 2.59% | 2.72 |
| 7/1/2006 | 19.99% | 1,128.38 | 2.59% | 2.40 |
| 8/1/2006 | 19.99% | 993.07 | 2.59% | 2.18 |
| 9/1/2006 | 19.99% | 890.10 | 2.59% | 1.96 |
| 10/1/2006 | 19.99% | 800.69 | 2.59% | 1.70 |
| 11/1/2006 | 19.99% | 714.33 | 2.59% | 1.57 |
| 12/1/2006 | 19.99% | 626.83 | 2.59% | 1.33 |
| 1/1/2007 | 19.99% | 484.53 | 2.59% | 1.07 |
| 2/1/2007 | 19.99% | 450.44 | 2.59% | 0.99 |
| 3/1/2007 | 19.99% | 413.72 | 2.59% | 0.82 |
| 4/1/2007 | 19.99% | 366.82 | 2.59% | 0.81 |
| 5/1/2007 | 19.99% | 321.57 | 2.59% | 0.68 |
| 6/1/2007 | 19.99% | 279.90 | 2.59% | 0.62 |
| 7/1/2007 | 19.99% | 229.41 | 2.59% | 0.49 |
| 8/1/2007 | 19.99% | 163.65 | 2.59% | 0.36 |
| 9/1/2007 | 19.99% | 117.65 | 2.59% | 0.26 |
| 10/1/2007 | 19.49% | 98.39 | 2.59% | 0.21 |
| | | | **TOTAL:** | **$165.49** |

6

Mr. Cosmas' total financial overcharge is found to be $5,189.00. Mr. Cosmas also lost his American Reward Points at the time his American Express card was canceled. Mr. Cosmas' statement dated September 30, 2003 shows his total Reward Points were 616,766. In a letter dated April 7, 2004 American Express informed Mr. Cosmas that because his corporate card account #41009 had been canceled he would be unable to reinstate his Reward Points to his account # 21002.

From information provided to us and our economic loss analysis we find the value of Mr. Cosmas' economic loss to be **$5,189.00**, not including his lost American Express Reward Points.

Mr. Cosmas also claims that as a result of American Express' notation on his credit report, his ability to use his Chase credit card (Account # 0191) ended in June 2006, and thus he claims loss of opportunity to benefits from the interest rate he was charged at the time.

Very truly yours,

ECO-STAT LLC

Michael Soudry, MBA

| | |
|---|---|
| ... until 1/20/06 to provide | 53,122.28 |
| ... responses. Told him I'll ck | 53,122.28 |
| ... w/atty & get back to him. | 53,122.28 |
| DC< Call to Defendant - advised | 53,122.28 |
| ... him since this is a Law Div. | 53,122.28 |
| ... case he has 60 days in which | 53,122.28 |
| ... to respond to discovery.    TLH | 53,122.28 |
| 11/22/05 DC< spk w/def trnsfrd to TLH    PJM | 53,122.28 |
| DC< Debtor Called: w/questions as | 53,122.28 |
| ... to the Req.for Adm. Wanted to | 53,122.28 |
| ... know if he needed to sign | 53,122.28 |
| ... anything. Told him to | 53,122.28 |
| ... complete his responses & | 53,122.28 |
| ... return to our office.    TLH | 53,122.28 |
| 12/12/05 DC< Debtor Called: wanted to know | 53,122.28 |
| ... add. and time limit for | 53,122.28 |
| ... interogatories, gave add, and | 53,122.28 |
| ... advised 60days    JMH | 53,122.28 |
| ... TC from mediator Ron Berger- | 53,122.28 |
| ... wants to have conference call | 53,122.28 |
| ... on 12/29 @ 10:00am, I will set | 53,122.28 |
| ... up the call.    GTP | 53,122.28 |
| 12/13/05 SVD CM Served w/Lawsuit: 10/13/05 | 53,122.28 |
| D:A RVS Diary Code Added | 53,122.28 |
| LFN Letter from Our Network Atty- | 53,122.28 |
| ... Atty advises CM completing | 53,122.28 |
| ... request for admissions | 53,122.28 |
| D:D RCD Diary Deleted By HJT | 53,122.28 |
| D:D RVS Diary Deleted By HJT    HJT | 53,122.28 |
| 12/29/05 ... Had conference call w/def & | 53,122.28 |

DATE: 12/07/07    5/17/04    FILE HISTORY    PRINTED BY: KC    PG: 30
File #: 5-08525-0

| | |
|---|---|
| ... mediator. We scheduled | 53,122.28 |
| ... in-person mediation for 2/15 @ | 53,122.28 |
| ... 10:00 in our office. I am to | 53,122.28 |
| ... circulate statement of the | 53,122.28 |
| ... case approx 1 week prior to | 53,122.28 |
| ... mediation. | 53,122.28 |
| ...          . We have also been | 53,122.28 |
| ... requested to submit docs to | 53,122.28 |
| ... show that def is personally | 53,122.28 |
| ... liable for this debt as he | 53,122.28 |
| ... alleges he was merely an | 53,122.28 |
| ... employee of the company.    GTP | 53,122.28 |

Exhibit X



... w/proof of debt in
... anticipation of 3/15
... mediation. Can be reached on
... his cell phone: 908-507-3306

3/08/06' TTA  Talked to Attorney office

KC

3/10/06 ... TC from mediator-based on the
... fact that Amex has not
... indicated they intend to
... appear on 3/15 & have not
... provided me with any authority
... to settle on their behalf,
... mediator believes that they
... are not acting in good faith
... with regard to mediation. He
... is canceling 3/15 conference &
... will advise court that he is
... removing this case from
... mediation (also advising of
... his opinion that Amex is notr
... acting in good faith).
MC‹ Electronic Mail to:client

53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28
53,122.28

31

A True Copy
*Dan Regan*

DONALD F. PHELAN
CLERK OF SUPERIOR COURT
SUPERIOR COURT OF N.J.
MERCER COUNTY
RECEIVED AND FILED

AUG 1 0 2006

PREPARED BY THE COURT   SUE REGAN
Deputy Clerk of Superior Court

American Express Centurion Bank

Plaintiff(s)

*Ann Regan*
SUE REGAN
DEPUTY CLERK OF SUPERIOR COURT

Superior Court of New Jersey
Law Division
Mercer Vicinage
Docket #: L-2410-05

-vs-

Nicholas Cosmas

Defendant(s)

**Civil Action**

**JUDGMENT**

**THIS MATTER**, having been tried before The Honorable Paul Inne, J.S.C. on August 7, 2006; and the court having entered a verdict of no cause of action;

**IT IS** on this ___10th___ day of ___August___, 2006 hereby

**ORDERED** that judgment is entered in favor of the defendant, Nicolas Cosmas; and against plaintiff, American Express Centurion Bank; and

**IT IS FURTHER ORDERED** that plaintiff's Complaint is dismissed with prejudice and without costs to either party; and

**IT IS FURTHER ORDERED** that a copy of this Order shall be served upon all parties within a period of seven (7) days.

Paul Innes, JSC

Cc:   Hillary Veldhuis, Esq.
Nicholas Cosmas

Exhibit XI

O O Box

Nicholas Cosmas
22 Revere Court
Princeton Jct New Jersey 08558
609 897-9657
August 15. 2006
Re- 3783- 479639.41009
      3718- 219106-21002

Mrs Judy McCoy
American Express
Internal Collection
800-700-7619

Dear Mrs McCoy

It was a pleasure dealing with someone who showed interest in helping a card member. Attached is a copy of the court document showing judgment in my favor.

Because of the frivolous litigation brought by American Express I was penalized in three different matters.

1) I have always had a good credit rating, due to the above my rating was tarnished, I would appreciate you informing credit companies of the decision by the court

Due to the above all my credit cards increased the rate of interest on my balances. It also affected my mortgage rate when I refinanced. Needless to say it has cost me much money

3) On my personal Amex account I had over 50,000 pts. which were taken away. Due to the pending litigation.

As you can see it has been a costly experience! for which I am seeking restitution. Thank You

Yours truly,
Nicholas Cosmas
609 897 9657

Exhibit XII

22 Revere Court
Princeton Jct New Jersey 08550
August 29 2006

Equifax Service

Re Conf # 6241033935

As per our telephone conversation enclosed is a copy of the Court document received showing a dismissal of American Expresses' Complaint against ME. Please adjust my credit report accordingly. Also please correct the other items discussed on the telephone. Thank You.

Yours truly
Nichola Ramos
609 897 9657

Exhibit XIII

To Equifax
ATTN Conf. # 634 1033935

From L Cosmas
Tel 609 897 8657.

P.O. Box 105518
Atlanta, GA 30348

September 26, 2006

**EQUIFAX**

To Start An Investigation, Please Visit Us At
www.investigate.equifax.com

||I||ul|ul||l|l|l|lnul||lul|ul|l|l|lll|ul|l|l|l|l
000562767-917
Nicholas Cosmas
22 Revere Ct
Princeton Junction, NJ 08550-2162

Dear Nicholas Cosmas:

Below are the results of your request for Equifax to reinvestigate certain elements of your Equifax credit file.
Equifax contacted each source directly and our investigation is now completed. If you have any additional
questions or concerns, please contact the source of that information directly.

**>>> We have researched the credit account. Account # -0274536200193*** The results are:** This creditor has
verified to Equifax that the balance is being reported correctly. Additional information has been provided from the
original source regarding this item. If you have additional questions about this item please contact: *Amex; P.O. Box
7871, Fort Lauderdale, FL 33329*

If you have any additional questions regarding the information provided to Equifax by the source of any information,
please contact the source of that information directly. You may contact Equifax regarding the specific information
contained in this letter within the next 60 days by visiting us at www.investigate.equifax.com.

Thank you for giving Equifax the opportunity to serve you.

**Notice to Consumers**

Upon receipt of your dispute, we first review and consider the relevant information you have submitted regarding
nature of your dispute. If the review does not resolve your dispute and further investigation is required, notificatio
your dispute, including the relevant information you submitted, is provided to the source that furnished the dispute
information. The source reviews the information provided, conducts an investigation with respect to the disputed
information and reports the results back to us. The credit reporting agency then makes deletions or changes to yo
credit file as appropriate based on the results of the reinvestigation. The name, address and, if reasonably availab
the telephone number of the furnisher(s) of the information contacted while processing your dispute(s) is shown u
the "Results of Your Investigation" section on the cover letter that accompanies the copy of your revised credit file.

If you still disagree with an item after it has been verified, you may send to us a brief statement, not to exceed one
hundred words (two hundred words for Maine residents), explaining the nature of your dispute. Your statement will
become part of your credit file and will be disclosed each time that your credit file is accessed.

If the reinvestigation results in a change to or deletion of the information you are concerned about, or you submit a
statement in accordance with the preceding paragraph, you have the right to request that we send your revised credit
file to any company that received your credit file in the past six months (twelve months for California, Colorado,
Maryland, New Jersey and New York residents) for any purpose or in the past two years for employment purposes

$Exhibit\ XIIII$

1   credit bureaus.  So it goes from a current payer

2   to a 30-day payer account to a 60-day payer

3   account to a 90-day payer account and at a 120

4   days if any portion of the balance outstanding

5   becomes a 120 days past due, it's reported as a

6   derogatory account meaning that it's a delinquent

7   account at that point.

8        Q.    Now is there a file that American

9   Express would have concerning Mr. Cosmas which

10  they would have like a manila file about all the

11  reports that have been filed pertaining to him?

12  A.    I don't believe so.

13       Q.    Could one be created from the

14  computer?

15  A.    I don't know.

16       Q.    Okay.  Do you know when the first time

17  American Express reported to the credit bureaus

18  that Mr. Cosmas was delinquent regarding this

19  corporate account for roughly the amount of

20  $43,000?

21  A.    Based on the aging of the account as I

22  reviewed it, the account would have been reported

23  derogatory in November of 2003.

24       Q.    Okay.  And are you aware that Mr.

25  Cosmas had contacted American Express and said,

Exhibit XV

1    credit reporting?

2          Q.    Right.

3    A.    Based on what I have been able to ascertain

4    the answer is, yes.  The credit report was not

5    deleted until the end of 2007 or January of 2008,

6    something to that effect.

7          Q.    Yeah.  It was actually I think at some

8    point it was probably more like March of 2008?

9    A.    I think it was January of 2008.

10         Q.    Okay; all right.  Now what type of --

11   like you said, you were involved with compliance.

12   What does American Express do as a corporation to

13   avoid situations like this so there are safe

14   guards if somebody calls up and says it's not me,

15   it shouldn't happen and they finally essentially

16   prove their innocence which he did in 2006?  What

17   steps does American Express take, what procedure

18   do you have to follow so that these things don't

19   happen?

20   A.    Well, the contacting American Express'

21   front line, you know, telephone service center

22   representatives would be -- it would be difficult

23   for them to create any type of a file because the

24   account is technically no longer with American

25   Express, it's with one of the collection

1    in 2006; is that correct?  That's when --

2    A.    It's -- that's when the result was entered,

3    yes.

4         Q.    And what are the procedures -- in

5    other words, Mr. Cosmas, prior to the litigation

6    he contacted American Express and he says, hey,

7    I'm not responsible for this and apparently

8    nothing was done because from American Express'

9    standpoint they kept reporting him as delinquent

10   straight on up to the litigation; is that

11   correct?

12   A.    Yes.

13        Q.    And then we had litigation in which

14   the court said that Mr. Cosmas is not responsible

15   from the paperwork you see in front of you; is

16   that correct?

17   A.    There was a judgment entered in favor of

18   Mr. Cosmas, yes.

19        Q.    And thereafter should American Express

20   have notified the credit reporting agencies and

21   said clean up his credit, he doesn't owe the

22   $43,000?

23   A.    Should that have happened?

24        Q.    Yes.

25   A.    As a personal opinion, yes.  As a matter of

Exhibit XVI

Provost & Colrick P.C.
50 Thoreau Drive
Freehold, NJ 07728
732-462-6262
Attorneys for Plaintiff

| | |
|---|---|
| Nicholas Cosmas        ,<br>                    Plaintiffs,<br><br>        -V-<br><br>American Express Centurion Bank<br>                    Defendant, | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>DOCKET NO: 07-CV-6099 (FLW)<br><br>Civil Action<br><br>PLAINTIFFS RESPONSE  TO<br>DEFENDANTS MOTION<br>FOR SUMMARY JUDGMENT |

## POINT ONE

Plaintiffs first cause of action should not be dismissed.  Plaintiff is entitled to damages with respect to plaintiff's first cause of action.  Defendant stopped falsely reporting plaintiff's account as delinquent for failure to pay the amount due on the business corporate account only after plaintiff brought this suit.  Under the circumstances plaintiff is entitled to damages and attorney fees on the first cause of action.

## POINT TWO

The second cause of action should not be dismissed for want of proximate cause. It is common knowledge and the Court can take judicial notice of the fact that the wrongful reporting of plaintiff as delinquent for a debt of $49,000.00 has a negative impact on plaintiff's credit rating,

Defendant wrongfully persisted in reporting plaintiff delinquent on a debt that defendant knew was not plaintiff's.  Negative credit information results in the consumer paying higher interest rates.

### POINT THREE

Plaintiff's cause of action for intentional tort should not be dismissed. In reckless disregard of the truth of this matter, defendant persisted in reporting plaintiff delinquent on a corporate debt for which defendant knew plaintiff had no liability. It was defendant that commenced the civil action that resulted in the judicial determination that plaintiff was not responsible individually for the debt of the corporation, Yet in reckless disregard of the judgment of the Court and the protestation's of the plaintiff, defendant continued to report plaintiff delinquent for non payment of a $49,000.00 corporate debt.

### POINT FOUR

Plaintiff's third cause of action should not be dismissed for failure to establish that defendant's conduct was malicious and retaliatory. Defendant acted in reckless disregard of plaintiff's rights and the truth of the matter. Based on defendant's reckless disregard, plaintiff has a basis for alleging an intentional tort and defendant's acts may be characterized as malicious and retaliatory.

### POINT FIVE

Plaintiff's complaint should not be dismissed for failure to further detail more specifically violations committed by defendant. The Court Rules allow for notice pleading. Plaintiff's complaint sets forth cause of action for specific performance, negligence, intentional tort and violation of statutes that regulate the conduct of those involved in the credit reporting industry.

The factual allegation is that defendant knowingly reported plaintiff as deliquent for a debt that wasn't his. In this manner defendant violated the common law as well as provisions of the Fair Credit Reporting Act (FCRA) resulting in damages to plaintiff.

The Complaint complies with the Federal Rule of Civil Procedure 8(a)(2) in that it gives defendant fair notice of what the claim is and the grounds upon which it rests.

## POINT SIX

The fourth cause of action should not be dismissed as the FCRA applies to furnishers of information as well as reporting agencies. The liability of furnishers of information pursuant to the FCRA is reviewed in Gordon v. Greenpoint Credit. 266F.Supp.2d 1007 (2003). The FCRA imposes liability on any person who willfully or negligently fails to comply with any of the Act's requirements with respect to any consumers. Although defendant American Express may not fit the FCRA's definition of consumer reporting agency, the company that American Express uses to collect the debt may be found to fit the definition of a reporting agency as set forth in point four of defendant's memoranda of law. The collection agent was in contact with American Express with respect to plaintiff's dispute of his liability for the corporate debt and his loss of points.

As a result American Express was given notice by its collection agent of the fact that Mr. Cosmas, the consumer, was disputing his account and the false reporting of the corporate debt as that of Mr. Cosmas. Had American Express investigated Mr. Cosmas' dispute, American Express may have corrected the false information and obviated the need for this lawsuit.

## POINT SEVEN

Plaintiff's fourth cause of action should not be dismissed on the ground that the FCRA excludes American Express's false report from its definition of a "consumer report."

American Express was on notice by virtue of the judgment of the court exonerating Mr. Cosmas with respect to liability for corporate debt. They were further put on notice by Mr. Cosmas himself and by their collection agent.

Under the circumstances American Express had an obligation to investigate the disputed matter and to correct the false information.

POINT EIGHT

Plaintiff's fourth cause of action should not be dismissed as time barred.

The "wrong" inflicted upon plaintiff by defendant dates back to March of 2004. However the nature of the wrong is that of a continuing wrong. In spite of a court judgment, the protestations of the plaintiff and the report of the dispute from defendant's collection agent, the false information continued to be reported and wrongly confirmed until plaintiff brought this lawsuit.

POINT NINE

Plaintiff is entitled to punitive damages. Under the FCRA. 15 U.S.C. §§ 1681n(a)(2) provides for the award of punitive damages where the violation of the Act is willful. Here the defendant participated in obtaining a judgment exonerating the plaintiff from liability for $49,000.00 of corporate debt. In conscious disregard of the judgment and over the protestations of the plaintiff, defendant willfully failed to investigate and correct the false information for several years and until plaintiff was required to bring this lawsuit.

Under the circumstances there is good cause to award punitive damages to plaintiff.

POINT TEN

Plaintiff is entitled to punitive damages under plaintiff's common law causes of action. Defendant sued plaintiff to hold him liable for the debt of a corporation. The Court ruled against defendant and entered judgment exonerating plaintiff from any liability for the $49,000.00 debt. By not correcting the false information defendant acted in reckless disregard for plaintiff's rights and the consequences of their acts for several years. Under the circumstances punitive damages are warranted.