NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| NICHOLAS COSMAS, | : | **Civil No. 07-6099 (FLW)** |
|  | : |  |
| Plaintiff, | : |  |
| v. | : | **OPINION** |
|  | : |  |
| AMERICAN EXPRESS CENTURION BANK, | : |  |
|  | : |  |
| Defendant. | : |  |

---

Plaintiff Nicholas Cosmas ("Cosmas") originally filed the instant action in the Superior Court of New Jersey, Monmouth County, against Defendant American Express Centurion Bank ("AMEX") for allegedly slandering his credit. He brings claims under the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 et seq., and also asserts various state law claims. Defendant removed the action to this Court and now moves for summary judgment. Plaintiff opposes, and cross-moves for partial summary judgment on the FCRA claim. For the following reasons, Defendant's motion for summary judgment is granted as to the First Count of Plaintiff's Verified Complaint ("Complaint"), and denied as to the Fourth Count, the FCRA claim. As to the Second and Third Counts of the Complaint, which are state-law based claims, the Court notes, *sua sponte*, that Defendant failed to address whether these claims are preempted by FCRA. In light of the important Supremacy Clause implications of this issue, the Court denies without prejudice Defendant's motion to dismiss these counts and directs Defendant to file a motion within fourteen (14) days addressing whether the state law claims are preempted. In its papers, Defendant may move again for summary judgment on the state law claims themselves in the event the Court concludes that the claims are not preempted. Finally, Plaintiff's cross-motion for partial summary judgment on the FCRA claim is denied.

## I.  **BACKGROUND**

The following facts are undisputed by the parties unless otherwise noted.  As I must on a motion for summary judgment, I view the facts in the light most favorable to the non-moving party.  This means for AMEX's motion, I view the facts in the light most favorable to Cosmas.  For Cosmas' motion for partial summary judgment, I view the facts in the light most favorable to AMEX.

### A.  The Business AMEX Account

Cosmas worked for Tri State Environmental Co., Inc. ("Tri State"), a New Jersey company, as its controller beginning in 1993.  Cosmas Dep. at 18:1-3; 24:8-9.  Cosmas described this card, in his deposition, as a "supplemental" card of the type issued to "primary" Tri State employees.  Cosmas Dep. at 25:23-25; 26:1-5, 17-20; see also Gold Card Statement of Account for January 2003, Def. Open Br., Exh. E at 2-10 (listing charges by user).  It was issued jointly in his name and that of Tri State.  See Cosmas Cert., ¶ 1; see e.g., AMEX Business Gold Card January 2003 Statement, Def. Open Br., Exh. E at 1.  Cosmas utilized this account for approximately nine years.  Cosmas Dep. at 27:5-8.  Each month, the bill was paid by Tri State.  Cosmas Dep. at 34:1-4.

By October 2003, the balance on the business card was approximately $48,000.  AMEX Business Gold Card October 2003 Statement, Def. Open Br., Exh. E at 1.  The business subsequently failed in 2004, Cosmas Dep. at 18:21, and the card balance was not fully paid.  Id. at 34:2-4.  AMEX then hired a collection agency to collect the unpaid balance from Cosmas.  Garabedien Dep. at 19:24-25, 20:1.

#### 1.  The AMEX Suit

According to Cosmas' deposition testimony, he first noticed in March of 2004 that AMEX was reporting the business account as delinquent on his personal credit report.  Cosmas Dep. at 42:16.  The amount listed as delinquent was over $42,000.  See Credit Report of Nicholas Cosmas dated Jan. 10, 2006, Pl. Opp., Exh. VIII.  And, his credit report described the "Pay Status" of the account as "Charged

Off ....." Id.

In 2005, the collection agency employed by AMEX brought suit against Cosmas in the Superior Court of New Jersey, Mercer County, Docket No. MER-L-2410-05, ("the AMEX suit").[1]  Garabedien Dep. at 19:3-5.  The collection agency—not AMEX— hired the attorney that filed the suit.  Id.  In that action, Cosmas did not retain any attorney but appeared *pro se*.  Cosmas Dep. at 206:10-12.  He filed an Answer disputing that he was responsible for the debt.  Compl., ¶ 2.  According to Cosmas, the attorney representing AMEX's interest did not participate in the court-sponsored mediation in good faith.  See Cosmas Dep. at 203:13-20 (noting mediator's expression of displeasure at AMEX's participation in the mediation process); id. at 230:5-6 ("[AMEX] showed no care").  Further, and more significantly, the court agreed with Cosmas that he was not liable for the business debt and issued judgment in his favor in August of 2006.  See Compl., ¶¶ 1-2; Judgment dated August 10, 2006, Docket #: L-2410-05, Pl. Opp., Exh. XI.

After AMEX's suit against Cosmas was dismissed in August of 2006, Cosmas noticed that AMEX continued to report the account as delinquent on his credit report.  According to Cosmas, he contacted AMEX "by phone and in writing" to complaint about the erroneous reporting.  Cosmas Cert. at ¶ 8.[2]  Cosmas testified that he mailed "more than two" letters to AMEX, but he did not retain copies thereof.  Cosmas Dep. at 102:3.  In addition, notes from the collection firm hired by AMEX to collect the business account balance from Plaintiff reveal that he asserted to the collection firm on June 4, 2004 that he was not responsible for the bill.  See File Notes, Pl. Opp., Exh. VII (" . . . clms is nt one respons

---

[1]        The exact date the AMEX suit was filed is not clear from the record.

[2]        The Court notes that the exhibits referenced in the Cosmas Certification, annexed to the Verified Complaint, were not attached by either party.

4 bill").[3]  AMEX's manager of collections, Edmond Garabadien, further testified that it was the

collection agency's responsibility to notify AMEX once judgment was entered in the MER-L-2104-05

suit.  Garabedien Dep. at 20:16-22; 10:9-14.  But, he did not know whether or not the collection agency

gave AMEX notice of the final judgment.  Id.

By letter dated August 29, 2006, Cosmas disputed the AMEX deliquency reports with Equifax,

a credit reporting agency.  Cosmas Letter dated Aug. 29, 2006, Provost Cert., Exh. XIII.  Along with

his letter, he included a copy of the August 2006 judgment in his favor and requested that his credit

report be adjusted "accordingly."  Id.  Equifax responded unfavorably to Cosmas on September 26,

2006, stating:

> This creditor has verified to Equifax that the balance is being reported
> correctly.  Additional information has been provided from the original
> source regarding this item.  If you have additional questions about this
> item please contact: *Amex, P.O. Box 7871, Fort Lauderdale, FL 33329.*

Equifax Letter dated Sept. 26, 2006, Provost Cert., Exh. XIIII [sic] (emphasis in original).[4]

---

[3]      Plaintiff's counsel states in his certification that these notes are from "redacted' tapes
between Cosmas and representatives."  Provost Cert., ¶ 7.  AMEX clarifies, however, that these notes
belong to the collection firm hired by AMEX.  Specifically, they were between the collection firm and
the law firm hired by the collection firm to prosecute the ultimately unsuccessful MER-L-2401-05 suit
against Cosmas.  Garabedien Dep. at 20:16-22; 21:15-19.

[4]      The letter, further, describes Cosmas' dispute as a request for reinvestigation.  See id.
Reinvestigation is described by the FCRA as follows:

> Subject to subsection (f) of this section, if the completeness or accuracy
> of any item of information contained in a consumer's file at a consumer
> reporting agency is disputed by the consumer and the consumer notifies
> the agency directly, or indirectly through a reseller, of such dispute, the
> agency shall, free of charge, conduct a reasonable reinvestigation to
> determine whether the disputed information is inaccurate and record the
> current status of the disputed information, or delete the item from
> the file in accordance with paragraph (5), before the end of the 30-day
> period beginning on the date on which the agency receives the notice
> of the dispute from the consumer or reseller.

AMEX did not cease reporting the account as delinquent until early 2008. Garabedien Dep. at 18:7-9. AMEX's manager of collections acknowledged in his deposition that AMEX should have ceased reporting and "clean[ed] up [Plaintiff's] credit" once the August 2006 judgment was entered. Id. at 15:19-24.

        2.    Trustees v. Tri-State

Around the same time that the AMEX suit was initiated, in 2005, Cosmas was sued in the District of New York by Trustees of the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund and Training Program Fund ("Trustees") for business debts owed. See Compl. at 1, Trustees of the Mason Tenders Dist. Council Welf. Fund v. Tri-State Environ. Contr., Inc. ("Trustees v. Tri-State"), Civil Action No. 05-cv-8239. This debt included, inter alia, unpaid fringe benefits and dues. On July 12, 2006, Cosmas entered into a Consent Judgment in that action, resulting in a judgment against him personally for $101,993.13. Judgment on Consent Against Tri-State Environmental Contracting, Inc. and Nicholas Cosmas at ¶ 2, Trustees v. Tri-State, Civil Action No. 05-cv-8239. That judgment was later mailed to New Jersey, where Cosmas resides, for registration. See Letter from Proskauer Rose, LLP dated October 23, 2006, Def. Open. Br., Exh. I. Cosmas avers that he paid off this judgment and it is no longer on his credit report, though he does not indicate upon what date he paid the judgment or the date that it was removed from his report. Cosmas Dep. at 95:3-4, 20-21. Nor has either party submitted documentation establishing when it first appeared on his credit report or for what period of time it remained.

        3.    Damages

Generally, Cosmas asserts that, due to AMEX's reporting of the business account delinquency on his credit report, he suffered damages in the form of heightened interest rates on his existing cards

---

15 U.S.C. § 1681i(a)(1)(A).

issued by other holders, the closure of his Chase credit card account, and denial of a mortgage loan for an investment property.  Cosmas Dep. at 37:6-9.  He, further, avers that AMEX revoked the over 600,000 points he had accumulated on his separate personal AMEX card in light of the unpaid balance on the business card.  Id.  Facts regarding the personal AMEX card are explained in more detail below.

In terms of the mortgage denial, Cosmas testified that he completed a preliminary application in 2005 or 2006 to refinance his home in New Jersey.  Id. at 215:2-3, 14-15; 217:5-13.  Cosmas avers that the mortgage broker told him that his application was denied "because of [his] bad credit."  Id. at 216:23-25.  After the denial, Cosmas took the property "out of [his] name" and put it into his wife's name.  Id. at 219:9-12.  His wife was able to refinance the property solely in her name through the same broker that rejected Cosmas' application.  Id. at 219:15-220:5.  The interest rate on the refinanced mortgage was higher than the rate on the initial mortgage.  See id. at 220:24 - 221:10.  According to Cosmas, his damages are comprised of the difference between the payments on the higher, refinanced rate and the lower, initial rate.  Id. at 221:6-9.

Cosmas, further, asserts that he was charged higher interest rates and granted low credit lines when he opened two new credit card accounts, after March 2004, with Mutual Benefit and HSBC.  Id. at 63:8-10; 67:3-7.  Plaintiff estimates that he opened these accounts in 2006.  Id. at 66:3-4.  He bases his conclusion that Mutual Benefit and HSBC granted him a low credit line, because of the AMEX delinquency report, on the fact that he had generally enjoyed more favorable terms before the AMEX suit.  Id. at 67:21-69:5.

The existing credit card accounts affected, according to Cosmas, were Bank of America, Capital One, Chase, Discover, Fleet, and MBNA (formerly Harris Bank).[5]  Cosmas Dep. at 40:6-8.  Cosmas

---

[5]      Cosmas acknowledged in his deposition that some of cards for which he contends he incurred higher interest rate charges were in his wife's name, and he was only a supplemental card holder.  Cosmas Dep. at 161:4-6 (stating that Discover card was "in [his] wife's name"); 162:6-7 (stating

generally avers that he was charged the higher rates from March 2004 through early 2008. Id. at 41:11, 21-22; 70:19-21. He further testified that the card issuers did not notify him of the specific reason for the increase in his interest rate, although some of the issuers stated the increase was due to a change in his credit report. Id. at 49:9 - 52:15. Plaintiff concedes, however, that the monthly interest rates on his cards varied "[f]or all kinds of reasons" such as his taking of cash advances or promotional offers by the card issuers. Id. at 156:7; see e.g., 154:21-22.

Plaintiff's expert, Statistician Michael Soudry, M.B.A., opined on the higher interest rate charges Cosmas incurred. In his report, Soudry calculates the economic loss value of AMEX's erroneous reporting of the business debt as $5,189.00 "not including his lost American Express Reward points." Soudry Report, Pl. Opp., Exh. VIIII [sic] at 7. The report's calculation is based on the rates that Cosmas was charged by his other credit account holders after AMEX began reporting the business account delinquency. In the report, Soudry relies on the card issuer's statements denoting the purchase rate as proof of the increased rate charges. See id.; Cosmas Dep. at 160:2-3. Soudry's report also denotes the exact dates Cosmas' credit card issuers instituted the higher interest rates. Notably, Soudry's report does not mention either the Capital One or Discover card account referenced by Cosmas. In addition, the Soudry Report lists two separate Harris Bank cards, one of which is also denoted as MBNA. Id. at 1. Comparing the credit card statements provided to the Court with Soudry's Report, it is clear that there are irregularities in the latter regarding the dates upon which the higher interest rates began, which interest rates increased (e.g., the annual percentage rate ("APR") versus balance transfer or purchase rates), the dates the accounts were opened, and the number of accounts.[6]

_____

that he was a supplemental user). He also acknowledged in his deposition that he was not suing for charges incurred on her cards. Id. at 162:24-163:1. Thus, I will not consider any accounts in her name.

[6]        It appears, from my review of the record, that Soudry relied on the purchase amount interest as opposed to the APR throughout his report. In Cosmas' deposition testimony, by contrast,

In addition, Cosmas testified in his deposition that he was told by a Bank of America representative on May 19, 2007, that his interest rate would not be reduced because of the "bad debt" he owed American Express.  Cosmas Dep. at 194:24 - 195:2.  Similarly, Cosmas testified that he called Bank of America on January 14, 2008 requesting a reduction in his 29.9 interest rate.  Cosmas Dep. at 194:9-11.  He avers that "[t]he first thing [the Bank of America representative] brought up was $43,000 owed to American Express."  Id.

Cosmas, further, testified that, upon the increase in his interest rate,  he called Chase.  Cosmas Dep. at 59:18-21.  He avers that Chase would not decrease his rate but merely permitted him to close out the card and pay off the balance at his prior interest rate.  Id.  Cosmas' testimony does not specify exactly on what date he closed out this account.  A letter from Chase dated June 9, 2005, indicates that the account was closed due to Cosmas' "recent request to decline the change in terms."  See Letter from Chase Bank dated June 9, 2005, Gross Afft., Exh. K.[7]

B.    The Personal AMEX Account

Cosmas also utilized a personal credit card issued by AMEX during the time frame he possessed the business card.  Cosmas Cert., ¶ 2.  This card was totally separate from the business account card;  Cosmas had the personal card since the 1970s.  Cosmas Dep. at 30:15-17.  By October 2003, Cosmas had accumulated over 600,000 Membership Reward points ("reward points") on his personal card.  Membership Rewards Monthly Statement and Program News, Pl. Opp., Exh. 1 (denoting 600,295 points for the Statement Period of October 1 through October 31, 2003).  The circumstances

---

he relies on the APR.  Additionally, the Court notes that certain of Soudry's recitations of the statements are inaccurate.  For example, contrary to Soudry's recitation in his report, the October 2005 statement denotes a 14.74% purchase rate and APR.  See MBNA Statements at 22.

[7]        The Court notes Defendant's error in describing Exhibit K in counsel's affidavit as "statements from Chase account number 0191," when, in fact, the exhibit consists only of this letter.

surrounding the closure of this account are not totally clear from the record,  but it is clear that Cosmas

settled the amount due on the card for $25,000 on March 30, 2004 through a collection agency hired

by AMEX.[8]   Letter from Nationwide Credit, Inc. dated April 30, 2004, Pl. Opp., Exh. III.

Correspondence from AMEX to Cosmas states that AMEX relied on Cosmas' refusal to pay the

business account balance in revoking his points.  See Letter from AMEX dated August 17, 2004, Pl.

Opp., Exh. VI ("[Y]ou were advised that you are responsible for the business Account . . . that business

Account would impact your ability to redeem the Membership Rewards points.").

     C.    <u>Procedural History</u>

     Plaintiff filed his Verified Complaint ("Complaint") on or about November 28, 2007 in state

court.[9]  At that time, the Complaint alleges, AMEX was still reporting the business card debt on

Cosmas' credit report.  Compl., Fourth Count, ¶¶ 2-3.  Thus, in the First Count of the Complaint,

Plaintiff seeks "specific performance" to enjoin AMEX from continuing to report the account as

delinquent and to require AMEX to contact the credit reporting agencies to remove the prior derogatory

reports.  Plaintiff's Second Count alleges negligence, and the Third Court "malicious and retaliatory

conduct" for AMEX's continued reporting to the credit bureaus after the state court judgment in MER-

L-2410-05 was entered in Cosmas' favor.  Lastly, the Fourth Count asserts a FCRA violation, alleging

that AMEX had "actual knowledge that its reports are inaccurate ...."  <u>Id.</u> at ¶ 3.  The Complaint does

not cite to any specific FCRA provision allegedly violated by AMEX.

---

[8]    Cosmas states in his deposition testimony that he believed the full balance was $38,000 when  he settled the account.  Cosmas Dep. at 14:11-13.

[9]    It is not clear from the record on exactly what date the Verified Complaint was filed. The copy attached to Defendant's Notice of Removal is not a "filed" copy.  Instead, it is denoted as "Signed and Sworn this 28th day of November, 2007."  It is clear from the record that an Order to Show Cause was issued by the state court judge on November 30, 2007.  Thus, for purposes of these motions, the Court concludes that the Complaint was filed sometime between November 28 and November 30, 2007.

On December 24, 2007, AMEX removed the case to this Court, citing the FCRA count as the basis of federal question jurisdiction under 28 U.S.C. § 1331.  Notice of Removal at ¶ 7.  Discovery ensued.  Now, both parties have moved for summary judgment.  AMEX moves on all claims, while Cosmas moves for partial judgment on the FCRA claim.  For the followings reasons, the Court will grant Defendant's motion as to the First Count and deny it as to the Fourth Count of Plaintiff's Complaint.  The Court will also deny Plaintiff's motion for partial summary judgment on the Fourth Count.  With respect to the Second and Third Counts, this Court raises, *sua sponte*, the question of whether these state-law claims are preempted by the FCRA and denies Defendant's motion without prejudice.  Defendant is directed to re-file its motion, as to the state law counts, addressing the question of preemption along with state-law bases for summary judgment.

## II.   <u>STANDARD OF REVIEW</u>

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 482 n. 1 (3d Cir. 2001) (<u>citing</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986));  <u>accord</u> Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Curley v. Klem</u>, 298 F.3d 271, 276-77 (3d Cir. 2002).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  <u>Kaucher</u>, 455 F.3d at 423.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Monroe v. Beard, 536 F.3d 198, 206-07 (3d Cir. 2008). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." Id. at 206 (quoting Matsushita, 475 U.S. at 586). Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. S.E.C. v. Antar, 44 Fed.Appx. 548, 554 (3d Cir. 2002).

## III.   DISCUSSION

AMEX makes several arguments in support of its motion for summary judgment. With regard to the Fourth Count, the FCRA claim, AMEX contends that Plaintiff's claim is barred by the applicable statute of limitations. AMEX, further, argues that the FCRA claim is inapplicable here because: (a)

AMEX is not a "consumer reporting agency," as that term is defined by the FCRA ; (b) AMEX did not provide a "consumer report" as defined by the statute; (c) the FCRA claim is insufficiently plead under Federal Rule Civil Procedure 8(a)(2).  Regarding Plaintiff's state law-based causes of action, AMEX argues that Cosmas has failed to adduce sufficient evidence to satisfy the elements of each of his state-law claims, particularly causation.[10]  In his motion for partial summary judgment, Plaintiff moves solely on his FCRA claim.

I turn first to application of the FCRA, which forms the basis for this Court's jurisdiction.  See Hukic v. Aurora Loan Svcs., 588 F.3d 420, 429 (7th Cir. 2009) (holding that district court had "original jurisdiction over the FCRA claim"); O'Brien v. Equifax Information Svs., 382 F.Supp.2d 733, 734 (E.D.Pa. 2005).  For context, I first provide a brief overview of FCRA claims against furnishers of credit information.

A.      The FCRA and Furnishers of Information

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 191 (3d. Cir. 2009) (quoting Safeco Ins. Co. of America v. Burr, 551 U.S. 47 (2007)).  While primarily aimed at credit reporting agencies, the FCRA also places obligations on creditors that furnish credit information to those agencies.  See e.g., 15 U.S.C. § 1681s-2(a) ("Duty of furnishers of information to provide accurate information").  The FCRA designates these persons as "furnishers of credit information."  Evantash v.  G.E. Cap.  Mrtg.  Svcs., 2003 WL 22844198, * 1 n.1 (E.D.Pa. Nov.

_____

[10]      In addition, AMEX argues that Cosmas' specific performance count (First Count) must be dismissed as moot because Cosmas admits that, by 2009, AMEX ceased reporting the business account as delinquent.  See Cosmas Dep. at 233:13-15.  The Court agrees, and hereby dismisses the First Count of Plaintiff's Complaint.  See Jackson v. Rohm & Haas Co., 2010 WL 601350, *5 (3d Cir. Feb. 22, 2010) ("[W]hen the event sought to be enjoined . . . has occurred, [the injunctive relief request] is moot.")  Moreover, courts have held that "[u]nder the FCRA, a private party cannot seek injunctive relief."  Knetchel v. Choicepoint, Inc., 2009 WL 4123275 (D.N.J. Nov. 23, 2009) (citations omitted).

25, 2003) ("A furnisher of credit information is an entity 'which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies ....'") (citation omitted).

"Section 1681s-2 [of the FCRA] imposes two duties upon such furnishers of information:  the duty to provide accurate information (§ 1681s-2(a)) and the duty to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency (§ 1681s-2(b))."  Gibbs v.  SLM Corp., 336 F.Supp.2d 1, 11 (D.Mass. 2004) (quotation and internal citation omitted).  Private rights of action are permitted for claims brought under section 1681s-2(b) where the furnisher has received notice of a dispute from a credit collection agency.  See 15 U.S.C. § 1681s-2(b); id. at § 1681s-2(d); Martinez v. Granite State Mgmt., 2008 WL 5046792, *2 (D.N.J. Nov. 20, 2008).  By contrast, there is no private right of action against furnishers of information where the furnisher has *not* received such notice.  See 15 U.S.C. § 1681s-2(a); id. at § 1681(d); Martinez, 2008 WL 5046792 at *2.  In short, no private action may be brought based on an alleged violation of an independent duty on the part of a furnisher of information to verify accuracy.  Martinez, 2008 WL 5046792 at *2.

More specifically, section 1681s-2(b) is triggered when a furnisher of information "receiv[es] notice . . . of a dispute with regard to the completeness or accuracy of any information provided by [the furnisher] to a consumer reporting agency ...."  15 U.S.C. § 1681s-2(b)(1).  Notice, under this provision, must be "pursuant to section 1681i(a)(2)."  That section places a duty on the consumer reporting agency to report any dispute it receives from a consumer to the furnisher:

> Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer . . . *the agency shall provide notification of the dispute to any person who provided any item of information in dispute*, . . . The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

15 U.S.C. § 1681i(a)(2) (emphasis added).

Once the notice is received by the furnisher of information, the furnisher is then required to take

several steps to resolve the dispute.  Campbell v. Chase Manhattan Bank, 2005 WL 1514221 (D.N.J. Jun. 25, 2005) (citing 15 U.S.C. § 1681s-2(b)(1)(A)-(D)).  First, the furnisher must "conduct an investigation with respect to the disputed information."  15 U.S.C. § 1681s-2(b)(1)(A).  Second, the furnisher must "review all relevant information provided by the consumer reporting agency ...."  Id. at § 1681s-2(b)(1)(B).  Third, the furnisher must "report the results of the investigation to the consumer reporting agency."  Id. at § 1681s-2(b)(1)(C).  Fourth, if the furnisher concludes that the "information is incomplete or inaccurate," it must report that conclusion to all consumer reporting agencies to which the furnisher supplied the erroneous information.  See id. at § 1681s-2(b)(1)(D).  Finally, "if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only" the furnisher of information must: "(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information."  Id. at §1681s-2(b)(1)(E).  See also Evantash, 2003 WL 22844198 at *6 (describing furnishers responsibilities under the FCRA).

District of New Jersey courts have summarized the proof required to state a section 1681s-2(b)(1)(B) claim as comprised of three elements, to wit:

(1) "[the consumer] sent notice of disputed information to a consumer reporting agency,

(2) the consumer reporting agency then notified the defendant furnisher of the dispute, and

(3) the furnisher failed to investigate and modify the inaccurate information."

Dimedio v. HSBC Bank, 2009 WL 1796072, *3 (D.N.J. Jun. 22, 2009) (quoting Martinez, 2008 WL 5046792 at *3).  Having set forth the general law applicable to furnishers of information under the FCRA, I now turn to the question of liability under the statute.  Both parties' motions implicate liability, but raise distinct arguments.  Hence, I will address them separately.

B.      AMEX's Statute of Limitations Challenge

14

The statute of limitations for suits brought against furnishers of information under the FCRA is as follows:

> An action to enforce any liability created [by the FCRA] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of--
>
> (1) 2 years after the *date of discovery by the plaintiff of the violation* that is the basis for such liability; or
>
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

Id. at § 1681p (emphasis added).  Here, Plaintiff contends that the Defendant violated the FCRA by reporting the business account as delinquent on his personal credit report after Plaintiff was granted judgment in his favor, in the AMEX suit, in August 2006.

Defendant contends that Plaintiff is time-barred, under section 1681p(1), from challenging all of AMEX's monthly reporting on the business account because he became aware of the reporting more than two years prior to filing suit.  As noted, Cosmas testified at his deposition that he became aware that AMEX was reporting the business account as delinquent on his personal credit report in March of 2004.  This suit was filed in November 2007; thus, if AMEX's proposed accrual date is correct, the suit would have been filed outside of the statute of limitations.[11]

AMEX is patently wrong, however, to posit March 2004 as the accrual date.  Under the FCRA, it is the earlier of the "date of discovery by the plaintiff of the violation" or "the date on which the violation . . . occurs" that triggers the limitations period.  15 U.S.C. § 1681p.  The violation here,

---

[11]     The limitations period, under the statute, is the earlier of two years from the date of discovery by the plaintiff of the violation, or five years after the date on which the violation occurred. The alleged violation here—AMEX inaccurate reporting in late 2006—and Plaintiff's discovery thereof were essentially simultaneous.  Thus, on these facts, it is the two-year period that is the earlier of the two potential limitation periods set forth in the statute.

according to Cosmas' complaint and summary judgment papers, is not that AMEX erroneously reported the account from 2004 onwards. Rather, his claim is based on AMEX's continued reporting of the delinquency *after* Cosmas obtained a favorable judgment on the account in state court in August of 2006. Counting from the August 2006 date, Cosmas' filing date of November 2007 is clearly within the FCRA limitations period.

The Court recognizes that the Complaint is generally inartfully drafted. Nevertheless, it is clear from the face of the allegations that Cosmas is challenging AMEX's post-August 2006 conduct. Cosmas references the state court judgment in the first three paragraphs of the Complaint, and then alleges that "[t]hereafter, plaintiff wrote to defendant and requested that they correct his credit status as it prevented him from obtaining financing and other valuable and necessary sources of credit." Compl., ¶ 4 (First Count). Actually, the entire first count seeks to enjoin AMEX from continuing to erroneously report the delinquency and cease harassing collection calls. (As AMEX acknowledges in its briefing, it did not cease its erroneous reporting until after Cosmas' suit was filed in November 2007.) In Cosmas' negligence count (Second Count), he describes the violation as "[a]fter the Mercer County Superior Court ruled in plaintiff's favor, defendant has and is reporting plaintiff's credit status as closed and past due." Id. at ¶ 3 (Second Count). Thus, reading his allegations as a whole, it is clear that he is challenging only post-August 2006 conduct in this suit, and the Court will so limit the claims.[12] Accordingly, the Court denies AMEX's motion for summary judgment on this basis.

C.    AMEX's Sundry FCRA Liability Challenges

Each of AMEX's other challenges to FCRA liability is without merit. AMEX's argument that

---

[12]    Indeed, as explained in more detail *infra*, the FCRA creates a private right of action only for those violations made after a consumer disputes his liability by complaining to a credit bureau such as Equifax. Thus, I question whether Cosmas could sue for AMEX's reporting prior to his August 2006 notice to Equifax.

the FCRA applies only to "credit reporting agencies" flies in the face of the FCRA's statutory language. Section 1681s-2(b), as noted, clearly imposes requirements on furnishers of credit information.  Accord Bach v. First Union Nat'l Bank, 149 Fed.Appx. 354, 359-60 (6th Cir. 2005); Leet v.  Cellco Partnership, 480 F.Supp.2d 422, 428 (D.Mass. 2007) ("The FCRA imposes responsibilities on three types of entities: (1) users of consumer reports; (2) consumer reporting agencies; and (3) furnishers of information.") (citing Gibbs, 336 F.Supp.2d at 11). AMEX's argument that it cannot be held liable under the FCRA because it did not provide a "consumer report" relies on section 1681s-2(a), see Def. Open. Br. at 18 (quoting 15 U.S.C. § 1681a(d)(2)(A)(I)), which is not the basis of Cosmas' suit.  Cosmas seeks relief under section 1681s-2(*b*), as explained *infra*.  That AMEX recognizes, elsewhere in its moving papers, the existence of such a cause of action under section 1681s-2(b) against furnishers of information makes AMEX's reliance on the § 1681s-2(a) law all the more puzzling.  See Def. Open.  Br.  at 23 (relaying Campbell v. Chase Manhattan Bank's discussion of section 1681s-2(b)(1) and setting forth duties of furnisher under the statute).

As for AMEX's argument that the FCRA claim is insufficiently pled under Federal Rule Civil Procedure 8(a)(2), AMEX contends that Cosmas failed to cite the specific subsection of the FCRA applicable to AMEX's actions.  Such a challenge may be raised on a motion to dismiss, see Fed. R. Civ. P. 12(b)(6) ("failure to state a claim upon which relief can be granted") but is inappropriate on summary judgment.  Indeed, in its papers, Defendant cites solely to Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which sets forth the standard for motions to dismiss.  See Def. Open. Br. at 16. More importantly, the Court finds this argument disingenuous.  That Defendant was well aware of the basis for Plaintiff's claims is evident in light of Plaintiff's citation to section 1681s-2 in his December 2007 moving papers seeking an Order to Show Cause.  Accordingly, each of AMEX's sundry challenges to FCRA liability is rejected as a matter of law and its motion for summary judgment, on these bases,

denied.

  D.  <u>Plaintiff's Motion for Partial Summary Judgment on FCRA Claim</u>

  Plaintiff moves for partial summary judgment as to liability on the FCRA claim.  Contrary to AMEX's red-herring arguments, Cosmas is correct that AMEX's conduct falls within the purview of the statute.  As noted, furnishers of information, like AMEX, are obligated to modify, delete or permanently block the reporting of inaccurate information after receiving notice from a credit reporting agency that a consumer disputes the information.  <u>See</u> 15 U.S.C. § 1681s-2(b)(1); <u>Evantash</u>, 2003 WL 22844198 at *6.

  Even viewing the facts in the light most favorable to AMEX, it is clear that Cosmas disputed the accuracy of the delinquent reports with Equifax by letter and that he enclosed a copy of the August 2006 judgment.  AMEX has not asserted that Equifax failed to forward the dispute to it for verification in accordance with section 1681i(a)(2).  By law, Equifax was required to include "all relevant information regarding the dispute that the agency has received from the consumer or reseller," <u>id.</u>, which, in this case, would include reference to, if not a copy of, the August 2006 judgment.  Once AMEX received this notice, it was obligated to "conduct an investigation," "review all relevant information," and "report the results ...."  15 U.S.C. § 1681s-2(b)(1)(A)-(C).  <u>See</u> <u>also</u> <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1167 (9th Cir. 2009).

  AMEX intimates that it did not receive appropriate notice under the statute because it was not aware of the August 2006 judgment at the time it was entered.  In Garabedien's testimony, he suggests that the collection agency hired by AMEX may not have notified AMEX of the judgment.  What the collection agency communicated to AMEX, however, is of no moment.  The pertinent question under the statute is whether AMEX received notice of the consumer's dispute from the credit reporting agency.  It is clear, on this record, that AMEX did.  Equifax's September 26, 2006 letter to Cosmas,

responding to his dispute, states that "[AMEX] has verified to Equifax that the balance is being reported correctly." And, AMEX does not disavow that it received notice from Equifax of Cosmas' dispute.

Even though it is undisputed that Cosmas sent notice of his dispute to Equifax, and that Equifax forwarded the dispute to AMEX, summary judgment in favor of Cosmas is nonetheless inappropriate at this juncture. To succeed on his FCRA claim, Cosmas must not only demonstrate that AMEX received notice of his dispute, but also that AMEX failed to conduct a reasonable investigation and correct any inaccurate information uncovered by the investigation. See Dimedio, 2009 WL 176072 at *3. The standard under which furnishers are judged is one of reasonableness. Evantash, 2003 WL 22844198 at *6 (citing Bruce v. First U.S.A. Bank, N.A., 103 F.Supp.2d 1135, 1143 (E.D.Mass. 2000)). And, whether a furnisher has conducted a reasonable investigation "is generally a question of fact for the jury." Id. (citations omitted).

Here, neither party has effectively argued as to the reasonableness of AMEX's investigation in their papers before the Court, and the burden is not on this Court to search the record and make arguments on the behalf of the parties. Thus, on this motion, Plaintiff has not met his burden of satisfying the Court that there exists no issue of material fact as to the reasonableness of AMEX's investigation.[13] Accord Campbell, 2005 WL 1514221 at *15 (denying summary judgment where parties did not address details of credit report agency's investigation).

Moreover, there exist genuine issues of material fact as to Plaintiff's damages which militate against a grant of summary judgment in his favor. While I need not rest my ruling on the damages issue, for completeness sake, I address it at this juncture. To prevail on his FCRA claim, Cosmas must demonstrate that he suffered damages in the form of "loss of credit or some other harm." See Bach

---

[13]   The Court notes Defendant's argument that Plaintiff's motion for partial summary judgment was untimely filed. Because I deny Plaintiff's motion for summary judgment, I need not address Defendant's timeliness challenge.

v. First Union Nat'l Bank, 149 Fed.Appx. 354, 360-61 (6th Cir. 2005) (citing Crabill v. Trans Union, LLC, 259 F.3d 662, 664 (7th Cir. 2001)).[14]  Cosmas must, further, show that such damages were caused by AMEX's conduct.  Philbin v. Trans Union, 101 F.3d 957, 966 (3d Cir. 1996).  "[A] FCRA plaintiff [must] produce evidence from which a reasonable trier of fact could infer that the inaccurate entry was a substantial factor that brought about the [injury]."  Id. at 968.  However, "he need not eliminate the possibility that correct adverse entries or any other factors also entered into the decision to deny credit."  Id. at 969 (internal quotation marks omitted).  As the Third Circuit recognized in Philbin, "decisions to deny credit will frequently have more than one cause [with] each, considered separately, . . . insufficient to have caused the denial of credit but when taken together are sufficient."  Id.  In such a circumstance, either cause "may . . . be considered a substantial factor in bringing about the denial of credit and therefore a cause of plaintiff's injury."  Id.

There is some support in the record suggesting that Cosmas suffered damages on account of the delinquency information that AMEX provided to the credit bureaus.  As revealed by this Court's review of Plaintiff's bank statements, some of his cards experienced increased interest rates during the time frame that AMEX was providing erroneous information.  Cosmas testified in his deposition that he was denied a mortgage loan to purchase a home in North Carolina.  He also testified that Chase and Bank of America representatives told him they would not reduce his interest rate on account of the AMEX delinquency.  And, record evidence suggests that AMEX cancelled Cosmas' reward points on his personal AMEX credit card because of his refusal to pay the Tri-State business card balance.

On the other hand, AMEX has pointed to evidence from which a jury could conclude that Cosmas' injuries were not due to AMEX's conduct.  Cosmas conceded in his deposition testimony that

_____

[14]    Because Plaintiff's state law claims may be preempted by the FCRA, discussed *infra*, I do not address Defendant's damages and causation arguments in connection with those claims.  Instead, I address those concerns here in connection with Plaintiff's FCRA claim.

the monthly interest rates on his cards varied for "all kinds of reasons" such as his taking of cash advances or promotional offers by the card issuers. Moreover, some of these increases took place prior to him submitting his August 2006 dispute to Equifax, which could not be considered by the jury. Cf. Philbin, 101 F.3d at 968 n.7 (holding that damages tied to those inaccuracies barred by statute of limitations could not constitute part of plaintiff's claim). The same is true for Chase's refusal, in 2004, to reduce Plaintiff's interest rate after raising it. Cosmas' testimony that a Bank of America representative told him his rate would not be decreased on account of the AMEX delinquency is hearsay that "could not be considered on a motion for summary judgment." Id. at 961 n1. Likewise, his testimony regarding the denied mortgage application is hearsay. Cosmas has not provided testimony from the mortgage representative or any documentation in support of this contention.

This leaves only those post-August 2006 increased interest rate charges that can be linked to AMEX's delinquency reports. The Court acknowledges AMEX's argument that the existence of the Trustees v. Tri-State judgment on Cosmas' credit report could be reasonably interpreted by a jury to have contributed to any denial of credit. This may be true, but according to the Third Circuit's decision in Philbin, a consumer need only demonstrate that the inaccurate credit information was a substantial factor in the denial of credit. Cosmas "need not eliminate the possibility that correct adverse entries or any other factors also entered into the decision to deny credit." Id. at 969. Thus, there exists genuine issues of material fact regarding whether the increased interest rates his cards experienced are due to AMEX's post-August 2006 delinquency reporting. On account of these issues, summary judgment is not ripe for decision on this motion.

Regarding the reward points associated with Cosmas' personal AMEX card, while the correspondence from AMEX indicating that it would not reinstate his reward points references his refusal to pay the business account balance, that injury is not directly tied to the specifics of Cosmas'

FCRA claim.  The essence of his FCRA claim is that AMEX failed to meet the dictates of section 1681s-2(b)(1), *i.e.*, AMEX failed to properly report the status of the business account to credit bureaus after he notified Equifax of his dispute.  The revoking of Cosmas' reward points is not an injury attributable to AMEX's provision of erroneous information to Equifax, but resulted from AMEX's inaccurate internal record keeping.  More importantly, AMEX's correspondence to Plaintiff is dated August 17, 2004—well before his cause of action for AMEX's post-August 2006 judgment reporting accrued.  Thus, the reward points cannot serve as a basis for damages for his FCRA claim as pled here.

Apart from fiscal harm or the denial of credit, "[a]ctual damages for a FCRA violation may include humiliation and mental distress."  Bach, 149 Fed.Appx. at *6.  See Philbin, 101 F.3d at 963; see generally Guimond v. Trans Union, 45 F.3d 1329, 1333 (9th Cir. 1995) (collecting cases).  "An injured person's testimony alone may suffice to establish damages for emotional distress provided that [he] reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements."  Bach, 149 Fed.Appx. at *6.  Here, Cosmas testified in his deposition that, after the August 2006 judgment was entered in his favor, he was forced to call and write AMEX numerous times to dispute the delinquency report.  Cosmas Dep. at 207: 16-17.  AMEX would refuse to forward him to anyone for assistance, id. at 207:24-25, and, as a result, AMEX treated him like "what is this piece of dirt calling me."  Id. at 207:17-18.  From this testimony, a reasonable jury could conclude that Cosmas was made ashamed by AMEX's conduct.  Accord Philbin, 101 F.3d at 963 n.3 (rejecting defendant's argument that plaintiff's "humiliation and embarrassment" was insufficient to support an award for emotional damages).  On the other hand, a jury could disbelieve his testimony finding his reaction unreasonable under the circumstances.  Thus, there is also a genuine issue of material fact as to whether Cosmas has demonstrated emotional distress damages.

In sum, Cosmas has presented some evidence of damages from which a jury could infer that he

suffered injury on account of AMEX's conduct.  Some of the increased interest rate charges he incurred

and his emotional distress damages may form the basis for a viable damages claim.  But because there

are factual disputes to be resolved in regards to this evidence, summary judgment in his favor is

inappropriate at this time.

E.       Punitive Damages

Next, AMEX seeks to foreclose the possibility of punitive damages.  While recognizing that the

FCRA authorized punitive damages against furnishers that willfully violate the statute, see 15 U.S.C. §

1681n[15], AMEX argues that Cosmas has presented no evidence of wilfulness.  AMEX cites to Campbell,

2005 WL 1514221 at *16, in support of its contention.

The court in Campbell addressed a claim against the three credit reporting agencies, in which

a plaintiff-consumer alleged that the agencies wilfully disregarded her repeated requests to have her

---

[15]        Section 1681n provides, in pertinent part,

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--

(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

credit information corrected.  The plaintiff in that case disputed the accuracy of late payments reported by Chase Bank to the agencies.  Id. at *1-*6.  In addressing the FCRA's punitive damages provision, the court noted that the Third Circuit has interpreted the wilfulness requirement as a knowing and intentional act "in conscious disregard for the rights of others."  Id. at *16 (quoting Cushman v. Trans Union, 115 F.3d 220, 226 (3d Cir. 1997)).  The act need not, however, have been committed with malice or with evil motive.  Id.  Because the Campbell Court had previously concluded that genuine issues of material fact as to the agencies' conduct remained, it could not grant summary judgment on the issue of punitive damages.  Id.; id. at 16 n.14.

Perhaps blinded by its fervor in advocating its position, AMEX sorely misinterprets Campbell.  AMEX erroneously describes the holding of Campbell as follows: "the Court found that plaintiffs had no evidence to support plaintiffs' [sic] contention of willfulness, and denied their motion."  Def. Open. Br. at 23.  There is nothing in the Campell opinion to support such a reading.  To the contrary, that court clearly based its denial of summary judgment on the existence of genuine issues of material fact as to the nature and degree of the agencies' investigation of the plaintiff's claim.

Indeed, I find Campbell's (actual) reasoning applicable here.  There are genuine issues of material fact as to the nature and degree of AMEX's investigation.  With unresolved facts as to the investigation, there can be no conclusion as to AMEX's wilfulness.  Accord Whitfield v. Radian Guar., Inc., 501 F.3d 262, 270-71 (3d Cir. 2007) vacated as moot by Radian Guar., Inc. v. Whitfield, 128 S.Ct. 2901 (2008); DiPrinzio v. MBNA America Bank, N.A., 2005 WL 2039175, *9 (E.D.Pa. Aug. 24, 2005) (denying summary judgment "where the intent of the defendant remained subject to a factual determination").  Cf. Safeco Ins. Co., 551 U.S. at 68-69 (concluding that wilfulness not shown by referring to developed factual record).

Moreover, Cosmas has presented some facts from which a reasonable jury could conclude that

AMEX wilfully violated the statute.  Wilfulness may be demonstrated "where the evidence shows that inaccuracies in credit reports arise from something more than an isolated instance of human error which [is] promptly cure[d]."  Evantash, 2003 WL 22844198 at *2.  Here, Plaintiff has presented evidence from which a jury could conclude that AMEX refused to correct its obvious error after notification from Equifax.  Summary judgment is therefore inappropriate and AMEX's motion, on this basis, is denied.

      F.     Preemption of State-Law Claims

     As noted, Cosmas brings negligence and a "malicious and retaliatory conduct" claims under New Jersey law in the Second and Third Counts of the Complaint.  Neither party addresses whether these state-law claims are preempted by the several preemption clauses in the FCRA, and the Court finds it appropriate to raise this issue *sua sponte* before addresses the merits of these claims.  Cf. Bigelow v. United Healthcare of Mississippi, Inc., 220 F.3d 339, 346 (5th Cir. 2000) (raising federal preemption question *sua sponte*).  Courts in this circuit have relied upon two FRCA preemption provisions to bar state law claims brought relating to the reporting of credit.  See e.g., Dimedio, 2009 WL 1796072 at *3; Campbell, 2005 WL 1514221 at *16-17.  But see Sites v. Nationstar Mortg. LLC, 646 F.Supp.2d 699, 706-712 (M.D.Pa. 2009).  Those sections are 1681t(b)(1)(F) and 1681h(e).  Section 1681t(b)(1)(F) provides, in pertinent part, that

> *[n]o requirement or prohibition* may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies ....

15 U.S.C. § 1681t(b)(1)(F) (emphasis added).  Section 1681h(e), by contrast, provides that

> *no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence* with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency, based on information disclosed . . . *except as to false information furnished with malice or willful intent to injure such consumer.*

15 U.S.C. § 1681h(e) (emphasis added).  Much discussion abounds in the case law regarding the

interplay of these two sections.  Barberan v. Nationpoint, --- F.Supp.2d ----, 2010 WL 1529324, *15 (S.D.N.Y. Mar. 2, 2010) ("District courts have long struggled to reconcile an apparent conflict between the two preemption provisions-the potential for total preemption of statutory and common law claims under § 1681t(b)(1)(F) and the explicit allowance of certain common law claims under § 1681h(e).")

In light of the importance of this legal issue, and the Court's preference not to rule without affording the parties an opportunity to adequately brief the issues, the Court directs Defendant to re-file its motion with respect to the Second and Third Counts within fourteen (14) days of the date of this Opinion.  Cf. Knechtel, 2009 WL 4123275 at *7 (denying motion to dismiss FCRA claim, without prejudice, where "neither party raised the potential pre-emption issue as to Plaintiff's requested relief.").  In addition to addressing preemption under FCRA, the papers may also address state law bases for summary judgment.  As noted throughout this Opinion, both parties' briefs were inadequate in several respects.  When the motion addressing preemption is filed, this Court fully anticipates that those derelictions will be rectified in the parties' briefing.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The motion is granted with respect to the First Count of Plaintiff's Complaint, but denied as to the remaining counts of the Complaint.  Plaintiff's motion for partial summary judgment is DENIED.  With respect to the Second and Third Counts, the Court denies Defendant's motion without prejudice.  Defendant is directed to re-file its motion, as to these counts, addressing the question of preemption along with state-law bases for summary judgment.  An appropriate Order will follow.

Dated:        June 11, 2010                           /s/ Freda L. Wolfson
                                                      Freda L. Wolfson, U.S.D.J.