**FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|                                      |   |                           |
|--------------------------------------|---|---------------------------|
| NICHOLAS COSMAS,                     | : | **Civil No. 07-6099 (FLW)** |
|                                      | : |                           |
|                   Plaintiff,         | : |                           |
|          v.                          | : | **OPINION**               |
|                                      | : |                           |
| AMERICAN EXPRESS CENTURION BANK,     | : |                           |
|                                      | : |                           |
|                   Defendant.         | : |                           |

---

WOLFSON, United States District Judge:

Plaintiff Nicholas Cosmas ("Cosmas") brought his action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and various state laws. In ruling on Defendant American Express Centurion Bank's ("AMEX's") previous motion for summary judgment, the Court directed the parties to file supplemental briefing addressing whether Plaintiff's state-law based negligence and "malicious and retaliatory conduct" tort claims were preempted by the FCRA. Having reviewed the parties' submissions, the Court now grants summary judgment on these claims.

I.      BACKGROUND AND PROCEDURAL HISTORY

The pertinent facts are recited in this Court prior written opinion on Defendant's initial motion for summary judgment. Hence only a brief summary is provided here.

While working for Tri State Environmental Co., Inc. ("Tri State"), from the early nineties through approximately 2004, Cosmas was issued and utilized a company AMEX credit card. By October 2003, the balance on the business card was approximately $48,000. Tri-State failed in 2004, and AMEX hired a collection agency to collect the unpaid balance from Cosmas. The collection agency filed suit against Cosmas in 2005. Ultimately, the suit was dismissed in August of 2006, and judgment

entered in Cosmas' favor, because the collection agency could not demonstrate that Cosmas contractually assumed personal liability for the business debts.

After the judgment was entered in Cosmas' favor, Cosmas noticed that the business debt continued to be reported on his personal credit report. He complained to AMEX and the collection agency but the business debt was not removed from his credit report. According to Cosmas, issuers of his other credit cards obtained copies of his report and either increased, or refused to decrease, the interest rates on his credit cards on account of the derogatory AMEX business card report.

Cosmas brought this suit, in November of 2007, to compel AMEX to cease reporting the business card debt on his credit report. In his complaint, the First Count sought "specific performance" to enjoin AMEX from continuing to report the account as delinquent and to require AMEX to contact the credit reporting agencies to remove the prior derogatory reports. Plaintiff's Second Count alleges negligence, and the Third Court "malicious and retaliatory conduct" for AMEX's continued reporting to the credit bureaus after the state court judgment was entered in Cosmas' favor. Lastly, the Fourth Count asserts a FCRA violation, alleging that AMEX had "actual knowledge that its reports are inaccurate ...." Id. at ¶ 3.

In its prior decision of June 11, 2010, the Court granted Defendant's motion for summary judgment with respect to the First Count, and denied summary judgment with respect to the Fourth Count. As to the Second and Third Counts, this Court denied summary judgment without prejudice and permitted Defendant to re-file its motion with a brief addressing whether the Second and Third Counts were preempted by the FCRA, or otherwise infirm. Defendant complied with the Court's directive, and the Court now grants summary judgment on the Second and Third Counts.

II.    STANDARD OF REVIEW

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Monroe v. Beard, 536 F.3d 198, 206-07 (3d Cir. 2008). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." Id. at 206 (quoting Matsushita, 475 U.S. at 586). Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible.  S.E.C. v. Antar, 44 Fed.Appx. 548, 554 (3d Cir. 2002).

III.    DISCUSSION

Cosmas brings negligence and "malicious and retaliatory conduct" claims under New Jersey law in the Second and Third Counts of the Complaint, respectively.  AMEX moves for summary judgment on preemption grounds with respect to both claims.  AMEX further argues, *inter alia*, that Cosmas's "malicious and retaliatory conduct" claim must be dismissed as an inappropriately plead prima facie tort under New Jersey law.  For the reasons that follow, AMEX's motion for summary judgment is granted.

A.    "Malicious and Retaliatory Conduct" Tort (Third Count)

In addition to its preemption argument, Defendant argues that the Third Count must be dismissed under New Jersey law.  In its view, the Third Count is plead as a "prima facie tort," *i.e.*, a "catch-all" tort that may be brought only when no other common law tort is available to the plaintiff.  Defendant cites Taylor v. Metzger, 152 N.J. 490 (1998) and Richard A. Pulaski Constr. Co. v. Air Frame Hangars, 195 N.J. 457 (2008), in support of its argument.  Plaintiff does not dispute Defendant's characterization of his claim as a prima facie tort.

In Taylor, the New Jersey Supreme Court rejected a plaintiff's attempt to plead a prima facie tort in a workplace discrimination case.  The Court noted:

4

> A prima facie tort cause of action would encompass the 'intentional, willful and malicious harms' that fall within the gaps of the law.  Prima facie tort claims have been most frequently permitted only in the limited situations in which plaintiffs would have no other causes of action.

152 N.J. at 523.  In the Court's view, there were two established causes of action that addressed the conduct challenged by the plaintiff: New Jersey's Law Against Discrimination and intentional infliction of emotional distress.  Id.  Hence, the Court concluded, "[p]rima facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its legs."  Id. (citing Belsky v. Lowenthal, 405 N.Y.S.2d 62, 65 (1978), aff'd, 418 N.Y.S.2d 573 (1979)).  In other words, "[p]rima facie tort should not be invoked when the essential elements of an established and relevant cause of action are missing."  Id. (citing Yeitrakis v. Schering-Plough Corp., 804 F.Supp. 238, 250-51 (D.N.M.1992)).  The Taylor Court made clear, however, that it was not deciding whether New Jersey would recognize a prima facie tort where no other established tort was available.  Id.

More recently, in Pulaski, the New Jersey Supreme Court reiterated the requirement that there be no other established tort available to a plaintiff pleading a prima facie tort.  The Court first noted that the prima facie tort is rooted in the Restatement (Second) of Torts § 870 (1979), which provides:

> One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.

Pulaski, 195 N.J. at 469 (quoting  Restatement (Second) of Torts § 870 (1979)).  Because the purpose of the prima facie tort is to provide a cause of action where one does not otherwise exist, the Pulaski Court termed it a "threshold requirement" whether other, established causes of action are available to the plaintiff.  Id. at 470.  In that case, the plaintiff prevailed on a breach of contract action but was unable to collect because of the defendant's insolvency.  Id. at 471.  Rejecting the plaintiff's argument that a prima facie tort remedy was necessary in light of the defendant's insolvency, the Court reasoned:

"Here, plaintiff had available to it a proper cause of action: its contract claim . . . , a claim it successfully prosecuted [and] had confirmed into a judgment. For that reason alone, plaintiff's separate claim for a prima facie tort against defendant must fail." Id.

Here, Cosmas's Third Court alleges that AMEX was "served with both [sic] Order of the Court finding plaintiff not liable for an alleged debt with defendant and plaintiff further wrote and communicated with defendant that he owed them no money." Compl., Third Count, ¶ 2. Despite knowledge of the judgment, Plaintiff further alleges, "Defendant out of spite and malice has continued to ruin plaintiff's credit status . . . [and] [a]s a result of defendant's malicious and retaliatory conduct plaintiff has suffered damages." Id., Third Count, ¶¶ 3-4. In essence, these allegations attempt to state a claim for slander of credit, a variation of a defamation claim. See Biederman v. Mitsubishi Motors Credit of America, Inc., 332 N.J.Super. 583, 591 (Law Div. 2000) (addressing slander of credit claim based on allegations that defendant inaccurately reported to the credit bureaus that plaintiff defaulted on a car loan) ; see id. (equating slander of credit cause of action with defamation); F.D.I.C. v. Bathgate, 27 F.3d 850, 871 (3d Cir. 1994) (analyzing slander of credit claim based on allegations that bank mailed out default letters containing false statement that plaintiff defaulted on loan).[1]  In his Complaint, Cosmas does not explicitly assert the slander of credit cause of action.  Because plaintiff could have plead a slander of credit claim, however, he is not entitled to bring a prima facie tort claim encompassing the same conduct. Accord Stevens Institute of Technology v. Hine, No. HUD-L-288-03, 2007 WL 2188200, *9 (N.J.Super.A.D. Jul. 31, 2007) ("The tort of defamation afforded plaintiff a legal

---

[1]      "The torts of trade libel, slander of credit, and slander of title require 'the publication, or communication to a third person, of false statements concerning the plaintiff, his property, or his business." Bathgate, 27 F.3d at 871 (discussing New Jersey law).

6

avenue to seek to redress the wrongs allegedly caused by defendants' conduct, and there was thus no "gap" to fill through a prima facie tort claim.").[2]

Furthermore, that Plaintiff brought a negligence claim challenging AMEX's failure to timely correct his credit report also forecloses him from bringing a prima facie tort claim asserting negligence concepts.  See Compl., Second Count (Negligence), ¶ 3 ("After the Mercer County Superior Court rules in plaintiff's favor, defendant has and is reporting plaintiff's credit status as closed and past due."). When the allegations of his prima facie tort and negligence claims are compared, they are essentially the same.

Therefore, because plaintiff brought a negligence claim challenging the same conduct alleged in his prima facie tort claim, and because plaintiff could have asserted a slander of credit claim, it is clear that Cosmas' resort to the prima facie tort is unwarranted.  There are several established legal claims that address the conduct plaintiff asserts injured him, so his "malicious and retaliatory conduct" tort, or prima facie tort, must be dismissed.[3]  Accord Ciemniecki v. Parker McCay P.A., Civ. Action No. 09-6450 (RBK), 2010 WL 2326209, *15 (D.N.J. Jun. 07, 2010) ("[T]he Complaint states a claim for a number of established torts. Moreover, there is no willful conduct alleged in the Complaint that is not encompassed by these traditional actions.")  For this reason, Defendant's motion for summary

---

[2]      I cite this unpublished New Jersey opinion as persuasive, and not binding, authority. See N.J. Court R. 1:36-3 ("No unpublished opinion shall constitute precedent or be binding upon any court.").

[3]      Cosmas does not address in his papers that his negligence allegations encompass the same conduct as his "malicious and retaliatory conduct" allegations.  Rather, he argues only that his prima facie tort claim "has legs" because it is "substantially independent of Plaintiff's F.C.R.A. claim" and "may be reasonable characterized as malicious and retaliatory."  Id. at 10..

judgment, with respect to the Third Count, is granted and I need not reach whether the prima facie tort claim is preempted by the FCRA.[4]

B.     Negligence Claim (Second Count)

Any state law that "interferes with or is contrary to federal law" is preempted by the Supremacy Clause of the United States Constitution.  U.S. Const. art. VI, cl. 2; Farina v. Nokia Inc., --- F.3d ----, 2010 WL 4138502, *10 (3d Cir., Oct. 22, 2010).  There are three types of federal preemption:  (1) express preemption, (2) field preemption, and (3) conflict preemption.  Id. (citing Hillsborough Cnty. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985)).  Preemption may apply to "all forms of state law," including statutory and common law claims.  See id. (citing Holk v. Snapple Beverage Corp., 575 F.3d 329, 331 (3d Cir. 2009)).  The Court construes Defendant's challenge as grounded in the doctrine of express preemption because, as explained in more detail below, Defendant relies solely on FCRA statutory language in support of its preemption argument.

"Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law."  Id. (citing Hillsborough, 471 U.S. at 713).[5]  When it is clear, as in the case of express preemption, that "Congress intended to preempt some state law, we still must examine congressional intent as to the scope of the preemption provision."  Id. at 12 (citing Medtronic, Inc., v. Lohr, 518 U.S. 470, 485-86 (1996) ("[A]ny understanding of the scope of a pre-emption statute must

_____

[4]       In addition, for the same reason Plaintiff's negligence claim is preempted, see infra, his prima facie tort claim would also be preempted under 15 U.S.C. § 1681t(b)(1)(F).  Like his negligence claim, the "malicious" tort "relat[es] to the responsibilities of persons who furnish information to consumer reporting agencies ...."  Id.

[5]       By contrast, "[f]ield preemption applies where 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," id., even though the statute does not explicitly preempt state-law claims.  And, "[c]onflict preemption nullifies state law inasmuch as it conflicts with federal law, either where compliance with both laws is impossible or where state law erects an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Id.

8

rest primarily on a fair understanding of congressional purpose." (emphasis and internal quotation marks

omitted)).   In ascertaining the provision's scope, courts "look primarily to the text of [the] express

preemption provision to discern congressional intent, [then] to the context of the regulatory scheme as

a whole, including its purposes and the way in which Congress intended it to affect the public and the

law."  Id. (citing Lohr, at 486).

Courts have relied upon two FRCA provisions to bar state law claims relating to the reporting

of credit by furnishers of information.[6]  See Sites v. Nationstar Mortg. LLC, 646 F.Supp.2d 699, 706-712

(M.D.Pa. 2009); DiPrinzio v. MBNA America Bank, No. 04-872, 2005 WL 2039175, *3-5 (E.D.Pa.,

Aug. 24, 2005).   Those sections are 1681t(b)(1)(F) and 1681h(e).   Section 1681t(b)(1)(F) provides, in

pertinent part, that

> *[n]o requirement or prohibition* may be imposed under the laws of any State
> . . . with respect to any subject matter regulated under . . . section
> 1681s-2 of this title, relating to the responsibilities of persons who
> furnish information to consumer reporting agencies ....

15 U.S.C. § 1681t(b)(1)(F) (emphasis added).   Section 1681h(e), by contrast, provides that

> *no consumer may bring any action or proceeding in the nature of defamation, invasion*
> *of privacy, or negligence* with respect to the reporting of information against
> . . . any person who furnishes information to a consumer reporting
> agency, based on information disclosed pursuant to section 1681g,
> 1681h, or 1681m of this title . . . except as to false information
> furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (emphasis added).[7]

---

[6]      As explained in more detail in my previous opinion, a furnisher of information "is an
entity 'which transmits information concerning a particular debt owed by a particular consumer to
consumer reporting agencies ...."  Evantash v. G.E. Cap. Mrtg. Svcs., No. Civ.A. 02-CV-1188, 2003
WL 22844198, * 1 n.1 (E.D.Pa. Nov. 25, 2003).

[7]      The entire text of section 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no
> consumer may bring any action or proceeding in the nature of

9

As I noted in my prior opinion, much discussion abounds in the case law regarding the interplay of these two sections. Barberan v. Nationpoint, 706 F.Supp.2d 408, 428 (S.D.N.Y. 2010) ("District courts have long struggled to reconcile an apparent conflict between the two preemption provisions—the potential for total preemption of statutory and common law claims under § 1681t(b)(1)(F) and the explicit allowance of certain common law claims under § 1681h(e).") This has lead some courts to develop three approaches to reconciling the two provisions, to wit: the "temporal," "total," and "statutory" approaches.[8]  See Sites, 646 F.Supp.2d at 706 (discussing three approaches). Indeed, the parties devote a significant portion of their briefing to discussing these several approaches.

---

defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

[8]      The Barberan Court concisely explains the three approaches:

Under the total preemption approach, 'all state causes of action against furnishers of information are deemed preempted by the sweeping language of § 1681t(b)(1)(F).'  'Under the temporal approach, state law claims based on actions of furnishers of information after the furnisher has received notice of inaccuracies are held preempted by § 1681t(b)(1)(F),' but actions taken before notice has been received are not preempted by § 1681t(b)(1)(F) and are governed solely by § 1681h(e). Thus, under the temporal approach, a plaintiff may bring a common law state claim if it relates to actions taken by a furnisher of information before it received notice and if the furnisher took action with malice or willful intent to injure.  Finally, under the statutory approach, courts have held that only state statutes are preempted by § 1681t(b)(1)(F), 'while section 1681h(e)-and its malice requirement-applies to state common law torts.'

706 F.Supp.2d at 428 n.14 (internal citations omitted).

Other courts do not view the two provisions as in conflict. Rather, those courts view only section 1681t(b)(1)(F) as a true preemption provision, and read section 1681h(e) as a limitation of liability provision instead.  See e.g., Thorton v. Equifax, Inc., 619 F.2d 700, 703-05 (8th Cir. 1980) (describing section 1681h(e) in terms of "qualified immunity"); Lawrence v. Trans Union, LLC, 296 F.Supp.2d 582, 590 (E.D.Pa. 2003) (same).  For example, the Barberan Court notes there is no actual conflict between section 1681t(b)(1)(F) and section 1681h(e) because the latter has limited application:

> The plain language of § 1681h(e) states that it applies to reporting of information "based on information disclosed pursuant to sections 1681g, 1681h, or 1681m ... or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." Thus, § 1681h(e) applies only to those who report information "based on" one of the specific categories of information listed.

706 F.Supp.2d at 429, n.16 (internal citations omitted).  Hence, such courts reason, "[i]n the absence of information being disclosed pursuant to sections 1681g, 1681h, or 1681m ..., section 1681h(e) is not applicable and *cannot even potentially be in conflict with section 1681t(b)(1)(F)*." Id. (citing Mark H. Tyson, State Law Furnisher Liability Claims and the FCRA-The State of Confusion, 63 Consumer Fin. L.Q. Rep. 19, 22 (2009)) (emphasis added).  Moreover, prior to section 1681t(b)(1)(F)'s inclusion in the FCRA, courts have noted that "section 1681h(e) was traditionally understood to be a limitation of liability provision ..." Id. (citation omitted).[9]

I find the reasoning of this latter group of courts persuasive.  For one, a plain reading of the text of section 1681h(e) clearly states that it is applicable only when a plaintiff's claim relates to information "disclosed pursuant to sections 1681g, 1681h, or 1681m . . . or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action ...."  15

---

[9]      Noticeably, the subheading for section 1681h(e) is titled "Limitation of Liability." See 15 U.S.C. § 1681h(e).

U.S.C. § 1681h(3); Def. Open. Br. at 8.  Accord Sites, 646 F.Supp.2d at 705-06; Johnson v. Citimortgage, 351 F.Supp.2d 1368, 1376 (N.D.Ga. 2004).  Here, Defendant AMEX concedes that section 1681h(e) does not bar Plaintiff's negligence claim for this reason.

In addition, this reading of 1681h(e) appears to comport with the FCRA's statutory structure.  The specific sections referenced in section 1681h(3)— sections 1681g, 1681h, or 1681m—each primarily involve disclosures made directly to a consumer.  It makes sense that section 1681h(e) would bar defamation, invasion of privacy, and negligence claims against furnishers of information that have made reports directly to a consumer, as opposed to a third party.[10]  Only those disclosures to third parties made with "malice or willful intent to injure such consumer" are actionable.[11]  See Lawrence, 296 F.Supp.2d at 590.

Finally, this interpretation of section 1681h(e) furthers the congressional purpose underlying the FCRA.  As originally enacted in 1970, the stated purpose of the FCRA was to ensure accurate and fair credit reporting through the implementation of reasonable procedures by consumer reporting agencies:

> It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is *fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information* in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b) (emphasis added).  Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007).  Congress subsequently amended the FCRA in 1996 to extend these sorts of duties to furnishers of information

---

[10]    The title of section 1681h supports this reading, although it is not necessarily a binding statement of congressional intent.  The section is titled "Conditions and form of disclosure *to consumers*."  Id. (emphasis added).

[11]    Plaintiff does not argue in his supplemental briefing that the "malice or willful intent to injure such consumer" exception applies here.

like AMEX. See Chiang v. Verizon New England Inc., 595 F.3d 26, 36 (1st Cir. 2010); id. ("This [extension] was intended to close an identified 'gap in the FCRA's coverage,' whereby even dutiful investigations of consumer disputes by [consumer reporting agencies] could be frustrated by furnishers' irresponsible verification of inaccurate information, without legal consequence to the furnishers.") (quoting The Consumer Reporting Reform Act of 1994, S.Rep. No. 103-209, at 6 (1993)). While "[t]hese consumer oriented objectives support a liberal construction of the FCRA, and any interpretation of this remedial statute must reflect those objectives," Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010), the FCRA generally tempers its consumer orientation with protections from liability for those furnishers that act reasonably and without malice or willful intent to injure. See Cushman v. Trans Union Corp., 115 F.3d 220, 223 (3d Cir. 1997) (noting that FCRA authorizes "private rights of action for *willful and negligent noncompliance* with any duty imposed by the FCRA) (emphasis added); cf. Sarver v. Experian Information Solutions, 390 F.3d 969, 971 (7th Cir. 2004) ("[T]the FCRA is not a strict liability statute.") (citation omitted); Anderson v. Trans Union LLC, 367 F.Supp.2d 1225, 1236 (W.D.Wis. 2005) ("A [defendant's] obligation under the [FCRA] is to employ reasonable procedures, not perfect ones.").

To be sure, it was the disclosure of inaccurate information *to third parties* that moved Congress to enact the FCRA. See 15 U.S.C. § 1681(a) ("*The banking system* is dependent upon fair and accurate credit reporting ....") (emphasis added); Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 191 (3d Cir. 2009) ("[I]n enacting § 1681, Congress realized that disclosures of consumer credit reports are often the direct result of inquiries initiated by consumers themselves. Congress allowed for disclosure in many such situations because they do not create significant privacy concerns.") (internal quotation marks and citation omitted). A reading of section 1681h(e) that insulates furnishers of information from

13

liability for disclosing derogatory information directly to a consumer, except when made with malice or willful intent, best reflects Congress' specific consumer protection concern.

For these reasons, I conclude that section 1681h(e)'s limitation of liability does not apply to, and thus does not bar, Plaintiff's negligence claim because Cosmas asserts that the inaccurate AMEX business card account information was not disclosed "pursuant to section 1681g, 1681h, or 1681m ...." 15 U.S.C. § 1681h(e). Since section 1681h(e) is not applicable here, there is no potential conflict with section 1681t(b)(1)(F) and, hence, no need to adopt one of the three approaches to reconciling the two provisions. Instead, the viability of Plaintiff's negligence claims turns solely on the applicability of section 1681t(b)(1)(F). To that provision, I now turn.

As noted, section 1681t(b)(1)(F) provides, in pertinent part, that

> [n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies ....

15 U.S.C. § 1681t(b)(1)(F). Courts in this district have interpreted this section to bar all state claims, whether statutory or common-law based. See e.g., Campbell v. Chase Manhattan Bank, Civil Action No. 02-3489, 2005 WL 1514221, *16-17 (D.N.J. Jun. 27, 2005) (misrepresentation, emotional distress, injurious falsehood, and breach of contract claims). Other recent circuit and district court opinions have applied section 1681t(b)(1)(F) to common law claims, albeit with little to no analysis of the statutory text. See Marshall v. Swift River Academy, LLC, 327 Fed.Appx. 13, 15 (9th Cir. 2009) (defamation claim); Pinson v. Equifax Credit Information Services, Inc., 316 Fed.Appx. 744, 746, 751 (10th Cir. 2009) ("Oklahoma tort law"); Leet v. Cellco Partnership, 480 F.Supp.2d 422, 431 (D.Mass. 2007) (negligence claim).

The Second Circuit in Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103 (2d Cir. 2009) analyzed whether section 1681t(b)(1)(A), a provision analogous to section 1681t(b)(1)(F), applies to

14

common-law claims.  That court read section 1681t(b)(1)(A)'s "no requirement or prohibition" language to include both statutory and common law claims.  Quoting the Supreme Court, <u>Premium</u> notes that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." <u>Id.</u> at 106 (quoting <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504, 521 (1992) (plurality opinion) and <u>Riegel v. Medtronic, Inc.</u>, 552 U.S. 312 (2008)).

The only language in section 1681t(b)(1)(A) that limits its scope, the <u>Premium</u> Court reasoned, is that relating to the subject matter implicated by the plaintiff's claim.  <u>Premium</u>, 583 F.2d at 106.  This is because the statutory language provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . *with respect to any subject matter regulated under . . . section 1681b of this title* ...."  15 U.S.C. 1681t(b)(1)(A) (emphasis added).  Thereafter, the court reasoned, the common law claims at issue in that case were predicated on a duty that fell under the subject matter referred to in section 1681t(b)(1)(A). Thus, in its view, any state-imposed duty must "must yield to the FCRA under the Supremacy Clause." <u>Id.</u> at 107.  Several district court opinions have since applied <u>Premium</u>'s rationale to common law claims brought under section 1681t(b)(1)(F).  <u>See</u> <u>e.g.</u>, <u>Barberan</u>, <u>supra</u> at 15; <u>Wedgeworth v. Result Matrix, Inc.</u>, No. 02:10cv184-WHA, 2010 WL 2794594, * 5 (M.D.Ala., Jul. 15, 2010) (citing <u>Barberan</u>, 2010 WL 1529324 at *17 n.16).

Contrary to <u>Premium</u>'s rationale, Plaintiff urges this Court to follow the reasoning of <u>Sites v. Nationstar Mortgage</u>, 646 F.Supp.2d at 709-10, where a Middle District of Pennsylvania district court held that section 1681t(b)(1)(F) applies only to statutory claims.  That court held that section 1681t(b)(1)(F) does not apply to common law claims for four reasons: (1) interpreting section 1681t(b)(1)(F) as limited to statutory claims renders it more consistent with section 1681h(e) because the latter specifically mentions only torts, namely, defamation, invasion of privacy, and negligence; (2)

the two exemptions from section 1681t(b)(1)(F) are for statutes—not common law causes of action; (3) "there is "no indication that Section 1681t(b)(1)(F) was meant to completely preempt all state law claims including state common law claims," id. at 709 (citation omitted); and (4) that sections 1681t(b)(1)(B) and 1681t(b)(1)(E) provide that they "shall not apply to any State law in effect on September 30, 1996," cannot be read to apply to common law claims because common law claims do not have effective dates.   In short, Sites does not suggest that the plain language of section 1681t(b)(1)(F) limits its application to statutes.   Rather, Sites reasons that the statutory structure surrounding section 1681t(b)(1)(F) compels a more circumscribed interpretation that the plain text of the section affords.

I find the decision by the Second Circuit in Premium more persuasive than the decision in Sites. For one, it goes without saying that Congress may preempt both statutory and common law based claims, and the plain language of section 1681t(b)(1)(F) does not distinguish between the two types of claims.  So, whether section 1681t(b)(1)(F) should be limited to statutory claims is really a question of the provision's scope.  When "Congress intend[s] to preempt some state law, [courts] must examine congressional intent as to the scope of the preemption provision."  Farina, 2010 WL 4138502 at *12 And, in ascertaining the provisions' scope, courts "look primarily to the text of [the] express preemption provision to discern congressional intent, [then] to the context of the regulatory scheme as a whole, including its purposes and the way in which Congress intended it to affect the public and the law."  Id. (citing Lohr, at 486).  While Sites may have pointed to some elements of the statutory structure that suggest that section 1681t(b)(1)(F) should be limited to statutory claims, noticeably absent from its analysis is any discussion of the FCRA's purpose.

As explained in more detail *supra*, the primary purpose of the FCRA is to ensure that only accurate credit information is collected and disseminated.  In enacting the FCRA, Congress created

detailed "reasonable procedures" directed at consumer reporting agencies and furnishers of information. Furnishers of information who establish reasonable procedures are, therefore, insulated from liability under the FCRA. Were this Court to adopt an interpretation that section 1681t(b)(1)(F) preempted only statutory claims, plaintiff could bring common law actions that expand, contract, or otherwise redefine the obligations imposed upon furnishers by the FCRA. Common law claims, by their nature, refine the contours of liability over time. And, with each state ruling on its own common law claims, national furnishers would likely be subject to inconsistent obligations in the various states. Ultimately, with such a patchwork framework, the congressional purpose of ensuring the consistent, accurate collection and dissemination of credit information stands to be compromised. Indeed, a "patwork system of conflicting regulations" is precisely what Congress intended to avoid in enacting the section 1681t(b) preemption provision. See Ross v. F.D.I.., --- F.3d ----, No. 08-1851, 2010 WL 4261819, *4 (4th Cir. 2010) (quoting Michael Epshteyn, Note, The Fair and Accurate Credit Transactions Act of 2003: Will Preemption of State Credit Reporting Laws Harm Consumers?, 93 Geo. L.J. 1143, 1154 (2005)).

Moreover, as noted by the Premium court, the Supreme Court has interpreted the "no requirement or prohibition" language to encompass both common law or statutory claims. In the Cipollone plurality decision, five justices held "common-law actions pre-empted by a provision of the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. § 1334(b), which said that '*[n]o requirement or prohibition based on smoking and health shall be imposed under State law* with respect to the advertising or promotion of any cigarettes' whose packages were labeled in accordance with federal law." Reigel, 552 U.S. at 324 (citing Cipollone, 505 U.S. at 523, 548-49) (emphasis added). In Reigel v. Medtronic, Inc., the Supreme Court affirmed Cipollone's holding, and further explained:

> In interpreting . . . statutes we have likewise held that a provision pre-empting state 'requirements' pre-empted common-law duties. Congress is entitled to know what meaning this Court will assign to

> terms regularly used in its enactments. Absent other indication, reference to a State's 'requirements' includes its common-law duties.

552 U.S. at 324.  Neither party addressed these Supreme Court decisions; both cases strongly suggest that section 1681t(b)(1)(F) should be interpreted to encompass both statutory and common law claims.

Finally, "[i]n discerning [congressional intent in a preemption case], [courts] look not only to Congress's express statements, but also to the 'structure and purpose of the statute as a whole, as revealed not only in the text, *but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.*" Farina, 2010 WL 4138502, at *10 (internal citations omitted) (emphasis added).  Taking into account this directive, I conclude that interpreting section 1681t(b)(1)(F) to encompass both statutory and common law claims is consistent with how Congress intended the FCRA to affect furnishers of information and consumers.  As such, Cosmas's negligence claim in the Second Count of his Complaint is barred by section 1681t(b)(1)(F) and Defendant's motion for summary judgment is granted on this basis.

IV.     CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's Second and Third Counts is GRANTED.

DATED: November 30, 2010

/s/ Freda Wolfson
United States District Judge

18